# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-KA-00968-SCT

*TERRY ROBERSON a/k/a "P.I." a/k/a TERRY*
*FERNANDO ROBERSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/21/2015 |
| TRIAL JUDGE: | HON. CHARLES E. WEBSTER |
| TRIAL COURT ATTORNEYS: | WILLIAM H. GRESHAM |
| | ROSHARWIN L. WILLIAMS |
| | AZKI SHAH |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | AZKI SHAH |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LADONNA C. HOLLAND |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/18/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., KITCHENS AND KING, JJ.**

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1. A jury convicted Terry Roberson for the murder of Tonya Burton and for being a felon in possession of a firearm. On appeal, Roberson claims the circuit judge erred by denying his proposed circumstantial-evidence instruction, by failing to grant a mistrial or spoliation instruction based on a missing audio recording, by failing to grant a mistrial based on hearsay testimony, and by admitting a shotgun and several shotguns shells into evidence. He also claims the State presented insufficient evidence to support his conviction for murder.

¶2.     We find that (1) the circumstantial-evidence instruction was fairly covered elsewhere in the instructions; (2) Roberson's due process rights were not violated, and he failed to request a spoliation instruction; (3) the trial judge offered and Roberson rejected an instruction to cure the hearsay testimony; (4) the shotgun and shells were admissible relevant evidence; and (5)) the evidence supported the jury's verdict.  We affirm.

## FACTS AND PROCEDURAL HISTORY

¶3.     On September 1, 2013, at about 6:00 a.m., Officer Nicholas Walsh of the Clarksdale Police Department responded to a call at a home where he found Terry Roberson standing in the yard.  Roberson flagged down Officer Walsh and led him to a bedroom where Tonya Burton lay propped against a bed with a gunshot wound to her chest.  At this point, Roberson asked if she was breathing, and when Officer Walsh responded that she was not, Roberson fled from the home.  Officer Walsh pursued Roberson, catching him in the backyard, and placed him under arrest.

¶4.     Officer Walsh also spoke with Roberson's neighbor, Dennis Davis, who had called the police.  According to Walsh, Davis stated that Roberson had appeared at his door and "was just saying that he got into it with his girlfriend."  But, according to Davis, Roberson appeared at his door between 5:50 and 6:00 a.m. on September 1 and told Davis that he had just found Burton shot, and that he needed Davis to call the police.  Davis recalled that he spoke to Walsh only to provide his name and phone number.

¶5.     In the back yard, officers discovered a bloody shirt and bloody women's shorts in a garbage can, but no weapons were recovered that day.  Officers did recover a 12-gauge

2

shotgun shell in a closet near where Burton was found. Later, on September 10, investigators found three more 12-gauge shotgun shells in an overgrown, grassy area behind the home. Then, on September 12, investigators found a 12-gauge shotgun containing a spent shell, in the overgrown area.

¶6.    A forensic scientist for the State testified that Roberson's right hand and shorts had particles consistent with, but not positive for, gunshot residue. He explained that a particle is positive for gunshot residue if it is round and contains lead, barium, and antimony. A particle is in consistent with gunshot residue when it is nonround or does not contain all three substances. A consistent, but not positive, finding cannot exclude all other potential sources for the particles.

¶7.    The State's pathologist confirmed that Burton had been shot in the chest, with an entry wound just below her collarbone and an exit wound on her back. The pathologist explained that the entry wound was three centimeters by two centimeters, and that the size of this wound exceeded that which would be inflicted by a handgun, which usually ranges from .5 to 1 centimeter in diameter. He also indicated that Burton had a contusion on her left eye.

¶8.    While under arrest, Roberson told investigators that he had been out all night and had not arrived home until 5:30 a.m., when he found Burton shot and gasping for air, and moved her from the bathroom to the bed. Roberson explained that he had blood on his shoes from moving Burton. He also told investigators that he had not fired a gun recently. While in custody, officers observed bruises on Roberson's leg and a scratch on his arm. They also observed blood on Roberson's foot. Forensics matched the blood on Roberson to a sample

from Burton. Roberson also told an investigator he had placed the bloody clothes in the trash can.

¶9. Timothy Kimble, who lived near Roberson and Burton, testified that he saw Roberson and Burton in the yard of their house between 3:30 and 4:00 a.m. on September 1. He explained that he stopped by because "[t]hey were just talking but it was like a commotion but it wasn't nothing like it be bad or nothing," and told them to take it inside the house. But, Kimble also testified that he did not see an altercation between Roberson and Burton.

¶10. Victor Jackson testified that on the night before Burton was shot, he picked up Roberson at his home around 10:00 p.m. and went to play pool at a place called Annabelle's. According to Jackson, he and Roberson remained there until around 1:00 a.m. Jackson testified that he then dropped Roberson off at a different club down the street.

¶11. Derrick Roberson, Roberson's brother, testified that he saw his brother at Annabelle's between 12:00 and 1:00 a.m. According to Derrick, they went to a place called JJ's until 2:00 a.m, then to Wop's restaurant until around 3:00 a.m., and then to a bar Derrick owned until around 5:00 a.m. Roberson then left on foot, but Derrick picked him up and took him home. Roberson arrived home around 5 a.m.

¶12. After hearing this evidence, the jury convicted Roberson of first-degree murder and possession of a firearm by a convicted felon. The circuit judge sentenced Roberson to serve a life sentence for murder and a consecutive ten-year sentence for felon in possession. Roberson appealed.

**ANALYSIS**

¶13. On appeal, Roberson claims the circuit judge erred by denying his proposed circumstantial-evidence instruction, by failing to grant a mistrial or spoliation instruction due to a missing audiotape, by failing to grant a mistrial based on hearsay testimony, and by admitting a shotgun and several shotgun shells in evidence. He also claims the State presented insufficient evidence to support his conviction for murder. Finding no error, we affirm.

## I. Roberson's Proposed Circumstantial-Evidence Instruction

¶14. Roberson first claims that the circuit judge erred by denying his proposed circumstantial-evidence instruction. Instruction D-1, which Roberson proposed and the circuit judge rejected, stated:

> The Court instructs the Jury that if you can reconcile the evidence upon any reasonable hypothesis consistent with the Defendant's innocence, you should do so and find him not guilty.

¶15. The decision to grant or deny a jury instruction lies "'within the sound discretion of the trial court.'"[1] When this Court reviews the trial judge's decision to grant or deny a particular instruction, the Court must view the jury instructions as a whole.[2] While the law provides a criminal defendant the right "'to have jury instructions which present his theory of the case,'" that right "'is limited, however, in that the court is allowed to refuse an

---

[1] ***Dickerson v. State***, 175 So. 3d 8, 26 (Miss. 2015) (quoting ***Flowers v. State***, 158 So. 3d 1009, 1062 (Miss. 2014)).

[2] ***Dickerson***, 175 So. 3d at 26 (quoting ***Flowers***, 158 So. 3d at 1062).

5

instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.'"[3]

¶16.  When the State relies on purely circumstantial evidence in a criminal case, the trial court, upon request by the defendant, must provide a circumstantial-evidence instruction to the jury.[4] The State's case is purely circumstantial when the prosecution lacks an admission by the defendant or an eyewitness to the gravamen of the charged offense.[5] Here, Roberson never admitted that he killed Burton, and no one witnessed the murder.  So, a circumstantial-evidence instruction was necessary.

¶17.  That said, the circuit judge did not err by denying Roberson's proposed circumstantial-evidence instruction because it was "fairly elsewhere in the instructions."[6] The circuit court provided two general instructions on the State's burden of proof.  Each included the "any reasonable hypothesis consistent with innocence" construct contained in Roberson's proposed instruction.  Instruction C-4A stated:

> A Defendant in a criminal case has no burden of proof whatsoever. The State of Mississippi, on the other hand, must prove beyond a reasonable doubt and *to the exclusion of every reasonable hypothesis consistent with innocence* that the Defendant committed the acts as alleged in the indictment.[7]

---

[3] *Dickerson*, 175 So. 3d at 26 (quoting *Flowers*, 158 So. 3d at 1062).

[4] *Mack v. State*, 481 So. 2d 793, 794–95 (Miss. 1985) (citing *Keys v. State*, 478 So. 2d 266 (Miss. 1985); *Hester v. State*, 463 So. 2d 1087 (Miss. 1985); *Billiot v. State*, 454 So. 2d 445, 461–62 (Miss. 1984)).

[5] *Mack*, 481 So. 2d at 795.

[6] *Dickerson*, 175 So. 3d at 26 (quoting *Flowers*, 158 So. 3d at 1062).

[7] Emphasis added.

Likewise, Instruction C-5A stated:

> The law presumes every person charged with the commission of a crime to be innocent. This presumption places upon the state the burden of proving the defendant guilty of every material element of the crime with which he is charged. Before you can return a verdict of guilty, the State must prove to your satisfaction beyond a reasonable doubt and *to the exclusion of every reasonable hypothesis consistent with innocence* that the defendant is guilty. The presumption of innocence attends the defendant throughout the trial and prevails at its close unless overcome by evidence which satisfies the jury of his guilt beyond a reasonable doubt and *to the exclusion of every reasonable hypothesis consistent with innocense*. The defendant is not required to prove his innocence.[8]

¶18.    In addition to the burden-of-proof instructions, each elements instruction provided the circumstantial-evidence standard to the jury.  Given that the judge provided the jury the circumstantial-evidence standard contained in D-1 five times over, we find that D-1 was "fairly elsewhere in the instructions."[9]

¶19.    In the alternative, Roberson contends that the circuit judge erred by failing to provide a two-theory circumstantial-evidence instruction as well.  But Roberson proffered no such instruction in the trial court, forfeiting the issue for appeal.[10]  We have held that a circuit judge need not give both varieties of circumstantial-evidence instruction.[11]

---

[8] Emphasis added.

[9] ***Dickerson***, 175 So. 3d at 26 (quoting ***Flowers***, 158 So. 3d at 1062).

[10] ***James v. State***, 106 Miss. 353, 63 So. 669, 670 (1913).

[11] ***Goff v. State***, 14 So. 3d 625, 662–63 (Miss. 2009) (quoting ***Kitchens v. State***, 300 So. 2d 922, 926 (Miss. 1974)) ("We hold today that ***Kitchens*** provides the better rule: 'In a case based entirely on circumstantial evidence, if an instruction is allowed that the evidence must exclude every reasonable theory other than that of guilt, that is held to embody the essentials of the two-theory instruction, . . . refusal of the latter is not reversible error.'").

## II. The Missing Audio Recording

¶20. On cross-examination, Officer Walsh testified that he was "quite sure" he had audio recorded his interaction with Roberson when he responded to the scene of the shooting. Roberson's counsel asked Walsh to produce the tape, and he responded that he did not have the tape and had turned the tape in to his shift commander. The prosecution then represented to the circuit judge that it had no such tape in its possession, and that the tape likely had been destroyed by the police department because no request had been made to preserve it. So Roberson's counsel asked the judge to declare a mistrial. The circuit judge denied the motion for a mistrial but commented that he might grant a spoliation instruction. Roberson now contends that the judge erred by failing to grant a mistrial, or for failing to grant a spoliation instruction. We disagree.

¶21. Roberson relies on this Court's decision in *Banks v. State* to support his argument that the circuit judge should have granted a mistrial.[12] In *Banks*, the State's expert witness used bite-mark analysis of a bologna sandwich to suggest that the defendant could have been at the scene of the crime.[13] Banks claimed that the circuit judge had erred by admitting the sandwich and bite-mark analysis in evidence because the State's expert had destroyed the sandwich after testing it, before Banks had an opportunity for independent evaluation.[14]

---

[12] *Banks v. State*, 725 So. 2d 711 (Miss. 1997).

[13] *Id.* at 713.

[14] *Id.* at 714.

8

¶22. This Court considered whether Banks's "due process rights were violated by the State's destruction of the sandwich before he could examine it."[15] The Court explained that:

> the State's duty to preserve evidence is limited to evidence that is expected to play a significant role in the defense. To play a constitutionally significant role in the defense, the exculpatory nature of the evidence must have been (1) apparent before the evidence was destroyed and (2) of such a nature that the defendant could not obtain comparable evidence by other reasonable means.[16]

Finding that the State's destruction of the sandwich violated Banks's due process rights, this Court reversed his conviction.[17] Roberson contends that this Court should reach a similar conclusion here.

¶23. But Roberson's argument fails to satisfy the first prong of the tested used in **Banks**. While Roberson's counsel argues that the audio recording would refute Officer Walsh's testimony that Roberson fled, that conclusion is mere speculation. For all anyone knows, the audio tape would confirm that Roberson fled. So we cannot conclude that "the exculpatory nature of the evidence . . . [was] apparent before the evidence was destroyed," and the circuit did not err by denying Roberson's motion for a mistrial.

¶24. That said, Roberson also claims that the circuit judge erred by failing to grant a spoliation instruction. But Roberson proffered no such instruction, forfeiting the issue for

---

[15] *Id.*

[16] *Id.* at 714–15 (citing **Tolbert v. State**, 511 So. 2d 1368, 1372 (Miss. 1987); **California v. Trombetta**, 467 U.S. 479, 489, 104 S. Ct. 2528, 2534, 81 L. Ed. 2d 413, 422 (1984); **Johnston v. State**, 618 So. 2d 90, 92 (Miss.1993)).

[17] **Banks**, 725 So. 2d at 716.

appeal.[18] Further, even if the circuit judge's sua sponte statement that he might grant a spoliation instruction preserved this issue for appeal, Roberson was not entitled to any such instruction.

¶25. This Court has held that a defendant is not entitled to a spoliation instruction absent evidence that the State destroyed the evidence with an intent to suppress the truth.[19] Here, the only explanation provided for the destruction was that the police department deleted or recorded over its audio recordings after thirty days if no request was made to preserve the tape. So the circuit judge did not err by failing to grant a spoliation instruction.

### III. The Hearsay Testimony

¶26. Officer Walsh testified that when he interviewed Dennis Davis, the neighbor who had called the police, Davis told him that he had talked to Roberson, and Roberson had said that "he got into it with his girlfriend." Roberson then moved for a mistrial, arguing that this statement was hearsay. At that point, the judge reserved ruling on the motion for a mistrial. He reasoned that if the State called Davis to testify, and Davis testified to the same statement by Roberson, the prejudice from Walsh's testimony would be cured because the same information would reach the jury from a nonhearsay source.[20]

---

[18] *James*, 63 So. at 670.

[19] *Tolbert*, 511 So. 2d at 1372–73 (quoting *Washington v. State*, 478 So. 2d 1028, 1032–33 (Miss. 1985)).

[20] Under the Mississippi Rules of Evidence, a party's own statement is not hearsay when offered by the opposing party. Miss. R. Evid. 801(d)(2). So Roberson's statement itself was not hearsay. Only Davis's statement, admitted through Walsh's testimony, gave rise to Roberson's hearsay objection.

10

¶27. But while Davis did testify, he was never asked about Roberson's statement. So Roberson renewed his request for a mistrial. The circuit judge then concluded that the statement was inadmissible hearsay but denied Roberson's request for a mistrial. Instead, he offered to instruct the jury to disregard that testimony. But Roberson's counsel declined the judge's offered instruction, preferring to avoid drawing attention to the statement.

¶28. In **Holly v. State**, this Court addressed the appropriate remedy when the jury is exposed to inadmissible hearsay testimony.[21] There, the State elicited from-a-witness hearsay testimony intended to bolster the defendant's accomplice's testimony.[22] Though the trial judge originally had ruled the statement admissible, he reversed his ruling and instructed the jury to disregard the testimony.[23]

¶29. This Court held that "[t]he trial judge is permitted considerable discretion in determining whether a mistrial is warranted since the judge is best positioned for measuring the prejudicial effect."[24] "When the trial judge determines that the error does not reach the level of prejudice warranting a mistrial, the judge should admonish the jury to disregard the impropriety in order to cure its prejudicial effect. 'This Court has repeatedly and consistently

---

[21] **Holly v. State**, 671 So. 2d 32, 37–38 (Miss. 1996).

[22] **Id.** at 37.

[23] **Id.** at 38.

[24] **Id.** (citing **Roundtree v. State**, 568 So. 2d 1173, 1178 (Miss. 1990)).

11

held that such action is sufficient to remove any prejudice resulting from the improper testimony.'"[25]

¶30. Here, as instructed by *Holly*, the circuit judge exercised his discretion to determine whether the prejudice created by the statement warranted a mistrial and, concluding that it did not, offered to admonish the jury to disregard the statement. Though the statement certainly created some prejudice—it essentially told the jury Roberson had admitted he fought with Burton on the day she was shot—we cannot conclude the judge erred by finding that it was not so prejudicial as to require a mistrial. The jury had also heard from Timothy Kimble that Roberson and Burton had been arguing that morning. That, taken with the other evidence of guilt—including the fact that Roberson's own alibi witness placed him at the scene of the shooting an hour before anyone called the police—support the judge's conclusion that a mistrial was not necessary.

### IV. The Shotgun and Shells

¶31. Roberson argues that the circuit court erred by admitting the shotgun and shells recovered behind Roberson's home in evidence over his objection at trial. He argues that this evidence was misleading to the jury because no witness confirmed that this shotgun was the murder weapon, or that Burton had been shot with a shotgun at all. We find that the circuit judge did not abuse his discretion by admitting the shotgun and shells.

---

[25] *Holly*, 671 So. 2d at 38 (citing *Perkins v. State*, 600 So. 2d 938, 941 (Miss. 1992); *Estes v. State*, 533 So. 2d 437, 439 (Miss. 1988); quoting *Baine v. State*, 604 So. 2d 249, 256 (Miss. 1992)).

¶32. "This Court reviews the trial court's decision to admit or exclude evidence under an abuse of discretion standard of review."[26] Under Mississippi Rule of Evidence 402, "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Mississippi, or by these rules."[27] "'Relevant Evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[28] But, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[29]

¶33. The question here is really one of conditional relevance. Mississippi Rule of Evidence 104 states:

> **(b) Relevancy Conditioned on Fact.** When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.[30]

Roberson essentially contends that the gun's relevance depended on it being the murder weapon, and the State failed to put forth proof that it was.

---

[26] ***Smith v. State***, 986 So. 2d 290, 295 (Miss. 2008) (citing ***Jones v. State***, 962 So. 2d 1263, 1268 (Miss. 2007)).

[27] Miss. R. Evid. 402.

[28] Miss. R. Evid. 401.

[29] Miss. R. Evid. 403.

[30] Miss. R. Evid. 104(b).

¶34.    The United States Supreme Court, interpreting Rule 104's counterpart in the Federal

Rules of Evidence,[31] has said that

> In determining whether the Government has introduced sufficient evidence to
> meet Rule 104(b), the trial court neither weighs credibility nor makes a finding
> that the Government has proved the conditional fact by a preponderance of the
> evidence. The court simply examines all the evidence in the case and decides
> whether the jury could reasonably find the conditional fact—here, that the
> televisions were stolen—by a preponderance of the evidence.
>
> . . .
>
> We emphasize that in assessing the sufficiency of the evidence under Rule
> 104(b), the trial court must consider all evidence presented to the jury.
> "[I]ndividual pieces of evidence, insufficient in themselves to prove a point,
> may in cumulation prove it. The sum of an evidentiary presentation may well
> be greater than its constituent parts."[32]

¶35.    Said differently, if the jury reasonably could conclude that the shotgun was the murder

weapon by a preponderance of the evidence, the circuit judge properly admitted the gun

under Rule 104.  And we cannot conclude that the judge abused his discretion in concluding

that the jury could so find.

¶36.    The shotgun—with a spent shell in the chamber—and unspent shotgun shells in

question were found in an overgrown grassy area behind Roberson's home.  Burton was shot

inside Roberson's home.  A shotgun shell, of the same brand and gauge as those found with

---

[31] This Court will look to federal courts' interpretation of the analogous Federal Rules
of Evidence for guidance in interpreting the Mississippi Rules of Evidence.  *See Galloway
v. State*, 122 So. 3d 614, 666 (Miss. 2013) (citing *Hopkins v. State*, 639 So. 2d 1247, 1250
(Miss. 1993)).

[32] *Huddleston v. United States*, 485 U.S. 681, 690–91, 108 S. Ct. 1496, 1501–02, 00
L. Ed. 2d 771 (1988) (quoting *Bourjaily v. United States*, 483 U.S. 171, 179–80, 107 S. Ct.
2775, 2781, 97 L. Ed. 2d 144 (1987)).

the gun, was found inside a closet near where Burton was shot. And the pathologist testified that Burton's wounds indicated that she had been shot with something larger than a handgun. Taking this evidence as a whole, the circuit judge did not abuse his discretion. A reasonable jury could conclude that this shotgun was the murder weapon, despite the fact that no one provided direct testimony to that effect.

## V. The Sufficiency of the Evidence

¶37. Finally, Roberson contends that the State presented insufficient evidence to convict him of first-degree murder. Roberson does not contend that the State failed to prove a particular element of murder beyond a reasonable doubt. Rather, Roberson argues that the testimony of Timothy Kimble was not credible, and that the State's forensic's expert testified that the particles on Roberson's hands were indicative, but not positive, for gunshot residue. Given that the State's case rested on circumstantial evidence, Roberson contends that the jury could not convict him based on discredited testimony and an inconclusive forensic analysis. We disagree.

¶38. When this Court reviews the sufficiency of the evidence to support the jury's verdict, the Court inquires as to "'whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"[33] In doing so, the Court must give the State "'the benefit of all favorable inferences that may reasonably be drawn from the

---

[33] *Nuckolls v. State*, 179 So. 3d 1046, 1048 (Miss. 2015) (quoting *Conner v. State*, 138 So. 3d 143, 147–48 (Miss. 2014)).

evidence.'"[34] Particularly relevant to this case, this Court has held that "[a] conviction may be had on circumstantial evidence alone,"[35] and:

> "the sufficiency of circumstantial evidence is peculiarly for the determination of the jury, because it is always solemnly to be weighed and acted upon by their understandings and consciences, and is, from its very nature, the subject of inferences and conclusions in their minds."[36]

Moreover, "the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony."[37]

¶39. So Roberson's argument that a witness for the State lacked credibility is irrelevant for purposes of this Court's sufficiency review. And, taking the evidence as a whole, we find that a reasonable juror could have found Roberson guilty beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence.

¶40. Roberson was found at the scene of Burton's murder, with blood on his clothes and particles indicative of gunshot residue on his hands. When Officer Walsh told Roberson that Burton was dead, Burton fled. Officers recovered a shotgun with a spent shell in the grassy area behind the house and a shell of the same type in a closet in Roberson's house. Forensic testimony established that Burton had been shot with something larger than a handgun. Further, Roberson's own witness testified that he arrived home shortly after 5:00 a.m., and

---

[34] *Nuckolls*, 170 So. 3d at 1046 (quoting *Conner*, 138 So. 3d at 148).

[35] *Tolbert v. State*, 407 So. 2d 815, 820 (Miss. 1981) (citing *Fortenberry v. State*, 216 Miss. 243, 62 So. 2d 325 (1953)).

[36] *Tolbert*, 407 So. 2d at 820 (quoting *Johnson v. State*, 23 So. 2d 499 (Miss. 1945)).

[37] *Gathright v. State*, 380 So. 2d 1276, 1278 (Miss. 1980).

the police were not called until 6:00 a.m.  Viewing this evidence in the light most favorable to the State, we find that the State presented sufficient evidence to support the jury's verdict.

## CONCLUSION

¶41.   Because all of Roberson's claims lack merit, we affirm his conviction and sentence.

¶42.   **COUNT I: CONVICTION OF FIRST DEGREE MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.  COUNT II: CONVICTION OF POSSESSION OF A FIREARM BY A CONVICTED FELON AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.  THE SENTENCE IN COUNT I SHALL RUN CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED. THE SENTENCE IN COUNT II SHALL RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I.**

**WALLER, C.J., RANDOLPH, P.J., LAMAR, KITCHENS, KING, COLEMAN, MAXWELL AND BEAM, JJ., CONCUR.**