918 So.2d 828 (2005)
Gregory ELKINS a/k/a Gregory Glenn Elkins, Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-02486-COA.
Court of Appeals of Mississippi.
July 26, 2005.
Rehearing Denied November 1, 2005.
Certiorari Denied January 12, 2006.
*830 J. Niles McNeel, Louisville, Cynthia A. Stewart, attorneys for appellant.
Office of the Attorney General by Jean Smith Vaughan, attorney for appellee.
Before BRIDGES, P.J., CHANDLER and ISHEE, JJ.
CHANDLER, J., for the Court.
¶ 1. Gregory Elkins was found guilty of fondling a child. The Circuit Court of Oktibbeha County sentenced Elkins to serve ten years in the custody of the Mississippi Department of Corrections and to five years of post-release supervision. Elkins appeals, arguing (1) that the trial court erroneously admitted the testimony of a social worker concerning her interview with Elkins's victim and (2) that the trial court erroneously denied Elkins's right to confront the witnesses against him by excluding impeachment evidence regarding the victim's motive to lie.
¶ 2. We find no error and, therefore, affirm Elkins's conviction and sentence.

FACTS
¶ 3. Elkins married T.B. in May 1996. T.B. had three children, the youngest of which, P.B., was seven years of age at the time of the marriage. Elkins and T.B. separated in July or August 1999, but continued to date until March 2001. In May 2002, P.B. told T.B. that Elkins had molested her on numerous occasions during the marriage.
¶ 4. Elkins was indicted for fondling a child and sexual battery. The trial occurred in October 2003. At the trial, P.B. testified that, beginning in 1996, Elkins performed oral sex on her on a regular basis. Primarily, this occurred when the two were alone in P.B.'s room at her bedtime. P.B. testified that the last time Elkins had touched her inappropriately was in May 1999, when she was ten years old. On that occasion, Elkins allowed P.B. to sit in his lap and steer his truck; P.B. said that Elkins placed his hand on her vagina on top of her bathing suit. Elkins withdrew his hand when P.B. threatened to disclose what he had been doing to her. Elkins told P.B. that no one would believe her if she told anyone what he had done.
¶ 5. Elkins's main defense theory was that T.B. had convinced P.B. to lie about the abuse as revenge for Elkins's having left T.B. for another woman. Elkins denied ever having performed oral sex on P.B. In a statement to police, he admitted *831 that he had touched P.B.'s crotch area inappropriately when she sat in his lap to steer the truck. At the trial, Elkins stated that this incident occurred in 1996, not in 1999. He explained that, while lifting P.B. into his lap to steer the truck, his hand slipped and he accidentally touched her bottom. The jury found Elkins guilty of fondling P.B. in May 1999 and acquitted Elkins of sexual battery. The court sentenced Elkins to ten years in the custody of the Mississippi Department of Corrections and five years on post-release supervision. Elkins appeals.

LAW AND ANALYSIS

I. WHETHER THE ADMISSION OF THE SOCIAL WORKER'S TESTIMONY DENIED ELKINS A FAIR TRIAL AND THE RIGHT TO CONFRONTATION.
¶ 6. On May 29, 2002, a social worker, Tomiko Mackey, conducted a "forensic interview" of P.B. concerning P.B.'s allegations of sexual abuse. On March 19, 2003, Elkins filed a motion in limine to prohibit Mackey from testifying about hearsay statements which P.B. made to Mackey at the interview. These statements, for the most part, paralleled P.B.'s trial testimony. The State sought to introduce the statements pursuant to the tender years exception to the hearsay rule. See M.R.E. 803(25). After a hearing, the trial court found that the tender years exception applied and denied Elkins's motion. At the trial, Mackey was accepted as an expert in forensic interviewing and child sexual abuse. Mackey testified extensively at the trial regarding her interview with P.B. On appeal, Elkins asserts several errors in the admission of Mackey's testimony.

A. Whether the trial court erroneously allowed Mackey to testify that P.B.'s demeanor, language and behavior were consistent with those of someone who has been sexually abused.
¶ 7. Mackey testified that a forensic interview is an investigative interview to determine if something has happened to a child and, if so, to elicit details from the child.[1] Mackey stated that, during her forensic interview with P.B., P.B.'s behavior and demeanor were consistent with those of children who have been sexually abused. Mackey also stated that, generally, children who have been coached to lie about abuse are unable to "keep a story straight." She said that P.B. related the same facts consistently and that she was able to clarify details. Elkins argues that this testimony was inadmissible because it amounted to an expert opinion that P.B. was telling the truth about the abuse.
¶ 8. Elkins did not object to this testimony. Elkins's motion in limine to exclude Mackey's testimony pertained only to P.B.'s hearsay statements, not to Mackey's expert opinions. Since Elkins failed to raise this issue in the trial court, it is barred from consideration on appeal. M.R.E. 103(a).
¶ 9. Notwithstanding the procedural bar, Elkins's argument is without merit. Mississippi Rule of Evidence 702 governs the admissibility of expert testimony. It is true that, in a child abuse case, a witness's opinion that the alleged victim was telling the truth is of dubious competency and, therefore, is inadmissible. Jones v. State, 606 So.2d 1051, 1057-58 (Miss.1992); Griffith *832 v. State, 584 So.2d 383 (Miss.1991). However, Mackey never opined that P.B. was truthful during the interview. Rather, she opined that P.B.'s behavior and demeanor were consistent with those of children who had been sexually abused, that children who have been coached to lie generally are unable to keep their stories straight, and that P.B. related the same facts consistently throughout the interview. While an expert may not opine that an alleged child sex abuse victim has been truthful, the scope of permissible expert testimony under Rule 702 includes an expert's opinion that the alleged victim's characteristics are consistent with those of children who have been sexually abused. U.S. v. Whitted, 11 F.3d 782, 785-86 (8th Cir.1993). Mackey's testimony was that P.B.'s behavior and story were consistent with those of child sex abuse victims. Therefore, the testimony of which Elkins complains was admissible. Id.

B. Whether there was error in allowing Mackey to testify as to what P.B. told her.
¶ 10. Elkins argues that the trial court erroneously denied his motion in limine to exclude Mackey's hearsay testimony about P.B.'s statements at the interview. Elkins claims that the ruling violated his right of confrontation and that the tender years exception did not apply to P.B.'s statements.

1. Confrontation clause violation.
¶ 11. Elkins argues that the trial court's admission of Mackey's hearsay testimony pursuant to the tender years exception violated his right to confront the witnesses against him under Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Crawford held that testimonial hearsay is admissible only if the declarant is unavailable to testify at the trial and the accused had a prior opportunity to cross-examine the declarant. Id. at 53-54, 68, 124 S.Ct. 1354.
¶ 12. The Crawford decision was handed down on March 8, 2004, some four months after Elkins's conviction. The Mississippi Supreme Court has not determined whether to apply Crawford retroactively. However, since Crawford is not on point with the facts of this case, this Court need not decide whether to apply Crawford retroactively in this appeal. Under Crawford, the confrontation clause is violated when a hearsay declarant is available to testify at the trial, but does not do so, and the defendant lacked an opportunity to cross-examine the declarant on a prior occasion. Id. Unlike the scenario condemned in Crawford, in the present case, P.B. testified at the trial and Elkins cross-examined her. Therefore, his right to confront P.B. was preserved despite the admission of P.B.'s statements during the testimony of Mackey. This issue is without merit.

2. Tender years exception.
¶ 13. Elkins also argues that the trial court erred in finding that P.B.'s statements to Mackey were admissible under the tender years exception to the hearsay rule provided by Mississippi Rule of Evidence 803(25). The admission of testimonial evidence is within the sound discretion of the trial court, which will be found in error only if the ruling was an abuse of discretion. Lynch v. State, 877 So.2d 1254, 1281 (¶ 86) (Miss.2004). The trial court must exercise its discretion within the confines of the rules of evidence. Austin v. State, 784 So.2d 186, 193 (¶ 23) (Miss.2001). Any error in the admission or exclusion of evidence is not grounds for reversal unless the error adversely affected a substantial *833 right of a party. Lynch, 877 So.2d at 1281 (¶ 86).
¶ 14. Rule 803(25) states:
A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness: provided, that when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
The comment accompanying Rule 803(25) lists twelve factors which the trial court should examine to determine whether substantial indicia of reliability exist. These include, in summary: (1) whether there is an apparent motive of declarant to lie; (2) the declarant's general character; (3) whether more than one person heard the statements; (4) whether the statements were spontaneous; (5) the timing of statements; (6) the relationship between the declarant and the witness; (7) the possibility of faulty recollection by the declarant is remote; (8) certainty that the statements were made; (9) the credibility of the witness testifying about the statements; (10) the declarant's age or maturity; (11) whether suggestive techniques were used in eliciting the statement; and (12) whether the declarant's age, knowledge and experience made it unlikely that the declarant fabricated.
¶ 15. P.B. testified at Elkins's trial. Therefore, her statements to Mackey were admissible if, after a preliminary hearing, the court determined that P.B. was of tender years and that her statements bore substantial indicia of reliability. M.R.E. 803(25). In assessing whether the tender years exception applies, the trial court should consider the age of the child at the time the statement was made, not the age of the child at the time of the trial. McGowan v. State, 742 So.2d 1183, 1187 (¶ 18) (Miss.Ct.App.1999). P.B. was thirteen years old at the time of her interview with Mackey. "There is a rebuttable presumption that a child under the age of twelve is of tender years." Veasley v. State, 735 So.2d 432, 436 (Miss.1999). When an alleged sex abuse victim is age twelve or older, the trial court must make a case-by-case determination of whether the alleged victim was of tender years "based on a factual finding as to the victim's mental and emotional age." Id. at 437. After a thorough preliminary hearing, the trial court found that, pursuant to Veasley, P.B. should be considered a child of tender years. The court further found that, considering Mackey's testimony at the preliminary hearing and the court's review of the videotape of the interview, P.B.'s statements at the interview bore substantial indicia of reliability.
¶ 16. Elkins argues that the trial court erred by failing to render factual findings regarding P.B.'s mental and emotional age, as required by Veasley, and that the court's conclusion that P.B. was of tender years was error. Our review of the court's ruling reveals that the trial court did not make a specific finding as to P.B.'s mental and emotional age. Instead, the court stated, "pursuant to Veasley . . ., the [c]ourt finds that the alleged victim in this cause was thirteen years old at the time the hearsay statements in question were made, and the victim should and shall be considered a child of tender years."
¶ 17. We find that any error in the court's failure to specifically find P.B.'s mental and emotional age was harmless and did not prejudice Elkins. At the hearing, *834 the court heard extensive arguments from both parties enunciating the standard for a finding that P.B. was of tender years. The court expressly rendered its finding pursuant to Veasley, the controlling precedent. The court viewed the videotape of the interview and had the opportunity to assess P.B.'s maturity through her demeanor and language. Further, the court's finding that P.B. was of tender years was supported by the evidence. Mackey testified that, in her observation during the interview, P.B. was not very mature for her age and appeared to regress in some ways as she spoke about the abuse. Though the lower court failed to render specific findings as to P.B.'s mental and emotional age, we find no error in the court's ruling that P.B. was of tender years at the time of the interview.
¶ 18. Elkins also argues that the court's finding that P.B.'s statements bore substantial indicia of reliability was error, and that the court erred by failing to make point-by-point findings on the twelve reliability factors. This Court has previously held that, because sufficient evidence supported the finding that the victim's statements bore indicia of reliability, the trial court's failure to make specific findings on reliability was not error. Sharp v. State, 862 So.2d 576, 580 (¶ 15) (Miss.Ct.App. 2004). In the instant case, copious evidence supported the trial court's finding that P.B.'s statements bore indicia of reliability. Elkins contends that P.B.'s statements were not spontaneous because they were made approximately three years after the alleged abuse ended. But, in Veasley, the court stated that a child's delay in reporting the abuse is excusable if the delay was caused by fear "or other equally effective circumstances." Veasley, 735 So.2d at 436. In the interview, P.B. said that she had not wanted to come forward because she was afraid of Elkins and she did not think her mother would believe her. She was also afraid of upsetting her mother, who was depressed about her divorce from Elkins. This evidence supported a conclusion that P.B.'s failure to come forward contemporaneously with the abuse did not undermine the reliability of her statement.
¶ 19. Further, Mackey testified that P.B.'s story was consistent and detailed throughout the interview, which was consistent with P.B.'s lacking a motive to lie and P.B.'s not having been coached. She testified that P.B. was engaged during the interview. Mackey stated that her role as an interviewer was neutral and that she had been trained in a specific interviewing protocol employing non-suggestive techniques. She stated that she had never met P.B. before the interview and had not seen her or spoken with her since. While P.B. admitted that she had habitually lied to her mother about her failure to perform household chores, it was within the trial court's discretion to weigh this evidence against the evidence relevant to the other reliability factors. We hold that the trial court did not abuse its discretion in finding that P.B.'s statements bore indicia of reliability and in admitting her statements pursuant to the tender years exception. This issue is without merit.

II. THE TRIAL COURT ERRONEOUSLY DENIED ELKINS'S RIGHT TO CONFRONTATION BY REFUSING TO ALLOW IMPEACHMENT EVIDENCE CONCERNING P.B.'S MOTIVE TO LIE.
¶ 20. Elkins argues that the trial court erroneously limited his cross-examination of P.B.'s mother, T.B., and erroneously excluded the testimony of T.B.'s ex-boyfriend, Rhett Burlage. He argues that these errors denied him his Sixth Amendment right to confront the witnesses against him. Elkins first complains that *835 he was not permitted to ask T.B. whether or not she had coached P.B. to lie about the abuse. A review of the trial transcript reveals that, in fact, Elkins asked this question and T.B. answered that she had told P.B. to tell the truth. Since the trial court actually did not make the adverse ruling of which Elkins complains, this issue is without merit.[2]
¶ 21. Next, Elkins argues that the trial court improperly excluded the testimony of T.B.'s ex-boyfriend, Burlage, concerning a telephone call that Burlage placed to Elkins. In the telephone call, Burlage informed Elkins that T.B., in order to exact revenge against Elkins, had coached P.B. to fabricate the abuse. Elkins explained that, if Burlage testified, Burlage would admit to having phoned Elkins and having told Elkins that T.B. had coached P.B. to fabricate. However, Elkins stated that Burlage would testify that he had lied to Elkins and had concocted the coaching story because he was angry at T.B. and desired to hurt her by helping Elkins evade conviction. Elkins proffered Burlage's testimony. A tape recording of the telephone conversation was made an exhibit to the proffer.
¶ 22. In the proffer, Burlage testified about his relationship with T.B. and the circumstances surrounding his call to Elkins. Then, the following exchange ensued:
Q. And what was the reason that you were calling for?
. . .
A. At the time, I was mad at [T.B.], and I had called. And I figured the best way to hurt her was to make up, you know, what would affect her with the hearing. So, I basically told Mr. Elkins what I thought would help him.
Q. What did you tell him?
A. I told him that [T.B.] was mad and she had been coaching [P.B] and telling her what to say and all that.
Q. Did you specifically say that you heard her tell [P.B.] you say that he touched you here? Do you recall that?
A. No, I don't.
Q. But you say you did tell him that she was coaching [P.B.] and telling her what to say?
A. Uh-huh.
Q. Did you tell him that she was out to get him?
A. I think I may have.
Q. Did you mention anything about how upset she was that the case was continued this past July?
A. Yes.
Q. Did you mention anything about the fact that she was concerned he was going to get off?
A. I may have. I'm trying to remember. I think  yeah, I think I did.
Q. Did you volunteer in that conversation to come and testify as a witness?
A. Yes.
Q. Did you tell him that you had had enough of her telling [P.B.] what to say and that's why you were calling him?
A. I think that's what I had told him.
The prosecution examined Burlage and elicited the following testimony:
Q. Did [Elkins's attorney] personally contact you?
A. Yes.
Q. Did you advise [Elkins's attorney] that you made up this entire story and that you were lying?

*836 A. Yes.
¶ 23. The trial court excluded Burlage's testimony, finding that it was an improper attempt by Elkins to call a witness for the sole purpose of impeaching him with otherwise inadmissible hearsay and that it was more prejudicial than probative. On appeal, Elkins argues that Burlage's testimony was relevant to show that P.B. had been coached to fabricate the abuse. He argues that he was entitled to call Burlage, to ask him if he had ever stated that P.B. had been coached, and then to impeach him with his prior inconsistent statements from the phone call to Elkins. Then, he argues, the jury would have been able to determine on which occasion Burlage was telling the truth about P.B.'s having been coached.
¶ 24. This issue deals with Elkins's attempt to impeach his own witness with a prior inconsistent statement. Mississippi Rule of Evidence 607 provides that any party may impeach the credibility of a witness, including his own. A witness may be impeached with a prior inconsistent statement if a proper predicate is laid and as long as the statement made in court is relevant and not collateral. Carlisle v. State, 348 So.2d 765, 766 (Miss.1977). But, before a party may introduce an unsworn, prior inconsistent statement of his own witness, the party must show surprise or unexpected hostility and that such statement can never be used as substantive evidence. Parker v. State, 691 So.2d 409, 413 (Miss.1997) (citing Wilkins v. State, 603 So.2d 309, 318 (Miss.1992)). A party may never use his witness's prior statement in the "guise of impeachment for the primary purpose of placing before the jury substantive evidence which is not otherwise admissible" in order to avoid the hearsay rule. Flowers v. State, 773 So.2d 309, 326 (¶ 58) (Miss.2000).
¶ 25. The aforementioned precedent indicates that the Burlage proffer was inadmissible for two reasons. Firstly, Elkins expected that Burlage would testify that he lied during his prior telephone conversation with Elkins. Therefore, Elkins did not show that Burlage's assertion that he had lied was a surprise or evinced unexpected hostility. Secondly, as Elkins's arguments amply illustrate, Elkins's primary purpose in offering Burlage was to introduce Burlage's prior statements to Elkins for their tendency to show that P.B. had been coached to lie by her mother. Thus, Elkins intended to introduce Burlage's prior statements for their substantive value. As recognized by the trial court, Burlage's prior statements constituted hearsay. M.R.E. 801(c). The statements could not be used as substantive evidence. Parker, 691 So.2d at 413. Therefore, the trial court acted within its discretion in preventing Elkins from introducing Burlage's prior inconsistent statements. This issue is without merit.
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF OKTIBBEHA COUNTY OF CONVICTION OF FONDLING AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FIVE YEARS OF POST-RELEASE SUPERVISION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, GRIFFIS, ISHEE, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN RESULT. IRVING, J., CONCURS IN RESULT ONLY.
NOTES
[1] In his reply brief, Elkins argues for the first time that Mackey was unqualified to render expert testimony. Elkins did not object to Mackey's qualifications as an expert and, indeed, declined to voir dire her qualifications. Therefore, this issue was not preserved for appellate review. McBeath v. State, 739 So.2d 451, 454 (¶ 11) (Miss.Ct.App.1999).
[2] The transcript also reveals that the trial court prevented Elkins from questioning T.B. about several of her prior statements to Burlage. Elkins proffered T.B.'s testimony concerning the statements. On appeal, Elkins does not specifically raise the exclusion of the proffered testimony as error and, therefore, we do not address it.