# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-00931-COA

**MELVIN PATRICK MASON A/K/A MELVIN P. MASON A/K/A MELVIN MASON**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/14/2015 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS JR. |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES BENJAMIN ALLEN SUBER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF FOUR COUNTS OF TOUCHING A CHILD FOR LUSTFUL PURPOSES AND SENTENCED ON EACH COUNT AS A HABITUAL OFFENDER TO LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THE SENTENCES IN COUNTS IV AND V TO RUN CONCURRENTLY WITH ONE ANOTHER, AND WITH THE SENTENCES IN COUNTS IX AND X TO RUN CONCURRENTLY WITH ONE ANOTHER AND CONSECUTIVELY TO THE SENTENCES IN COUNTS IV AND V |
| DISPOSITION: | AFFIRMED - 11/08/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## BEFORE IRVING, P.J., CARLTON AND GREENLEE, JJ.

**CARLTON, J., FOR THE COURT:**

¶1.     On March 21, 2012, the Hancock County Sheriff's Office received information about a reported child molestation.  The report alleged that Melvin Patrick Mason had molested his two nieces, M.C. and R.C.[1]  A Hancock County grand jury subsequently indicted Mason for three counts of sexual battery under Mississippi Code Annotated section 97-3-95(1)(d) (Rev. 2006) and ten counts of touching a child for lustful purposes under Mississippi Code Annotated section 97-5-23(1) (Rev. 2006).  A jury later found Mason guilty of four counts of touching a child for lustful purposes as charged in Counts IV, V, IX, and X of his indictment.  The circuit court sentenced Mason as a habitual offender to four life sentences, with the sentences in Counts IV and V to run concurrently with one another, and with the sentences in Counts IX and X to run concurrently with one another and consecutively to the sentences in Counts IV and V.

¶2.     On appeal from his convictions and sentences, Mason asserts the following issues: (1) whether the circuit court abused its discretion by admitting M.C.'s and R.C.'s hearsay statements under the tender-years exception; and (2) whether cumulative error deprived Mason of his right to a fundamentally fair and impartial trial.  Finding no error, we affirm Mason's convictions and sentences.

## FACTS

---

[1] In the interest of privacy, we substitute initials for the names of the two minor girls involved in the case.

¶3.     When M.C. and R.C. were still very young, their father was killed.  In August 2011, the girls and their mother moved into the same house as their father's brother, Mason.  The girls and their mother were later forced to move out of the home.  Afterwards, in March 2012, M.C. and R.C. were staying at the home of their friend Abby[2] when M.C. stated that Mason had raped both her and her younger sister, R.C.  On March 21, 2012, Abby's mother reported M.C.'s allegation to the police.  A grand jury later indicted Mason for three counts of sexual battery and ten counts of touching a child for lustful purposes.

¶4.     After the grand jury issued the multicount indictment against Mason, the circuit court scheduled Mason's trial for May 11, 2015.  Prior to trial, the circuit court granted the State's motion to amend Mason's indictment to reflect his status as a habitual offender under Mississippi Code Annotated section 99-19-83 (Rev. 2007).  The State also made a pretrial motion to admit into evidence under the tender-years exception M.C.'s and R.C.'s pretrial statements about the alleged molestation.  *See* M.R.E. 803(25).  The State asked the circuit court to allow the State to examine three witnesses during the pretrial hearing to whom the girls described the sexual abuse.  The State then asked that the circuit court recess the motion and wait until hearing M.C.'s and R.C.'s testimony on the first day of trial before determining whether to admit the pretrial statements.

¶5.     After the circuit court agreed to the State's request, the State called Abby as its first witness during the pretrial hearing.  Abby testified that her mother had been lifelong friends

---

[2] In the interest of privacy, the Court has substituted "Abby" for the minor's real name.

3

with M.C. and R.C.'s mother. Abby further testified that M.C. and R.C. had sometimes lived with her family, that she saw and spoke to the two girls regularly, and that the two girls considered Abby a cousin. Abby stated that, when she was fifteen, she was in her bedroom talking to M.C., who was twelve at the time. While M.C. was coloring on the bedroom floor, Abby said that M.C. disclosed that her uncle, Mason, had raped her and her sister, R.C. Abby testified that she immediately told her mother what M.C. had said.

¶6.     The State next called Captain John Luther with the Hancock County Sheriff's Office. Captain Luther testified that, on March 21, 2012, Abby's mother called to report Mason's alleged molestation of M.C. and R.C. Captain Luther learned that the alleged molestation had occurred at the home where M.C. and R.C. lived with their mother and Mason. Captain Luther testified that he spoke separately to both M.C. and R.C. M.C. told him that Mason "had done bad things to her" and that "the bad things had started happening when [Mason] had first moved [into the same house with her, R.C., and their mother.]" When he interviewed R.C., Captain Luther said she told him that Mason had moved into the same house as her family on her birthday on August 14, 2011, and that Mason "started doing things to her a few days after he had moved in with them . . . ."

¶7.     Based on his investigation, Captain Luther determined that the alleged molestation occurred for about seven months from August 2011 through March 2012. Captain Luther testified that both girls reported that the molestation occurred in front of each other and that Mason had also directed them to do things to one another. Captain Luther also determined

4

from his investigation that the last molestation had occurred about two weeks before M.C.'s conversation with Abby. At the time of the reported offenses, Mason was forty-three, M.C. was twelve, and R.C. was ten.

¶8. Laura Johnson, a forensic interviewer, next testified during the pretrial hearing. Johnson stated that she had been trained to question children in a nonleading manner and that she employed RATAC,[3] the accepted protocol for interviewing children, during her interviews. Johnson testified that she separately interviewed M.C. and R.C. on April 11, 2012. Both interviews were videotaped.

¶9. Although R.C. was the younger of the two sisters, Johnson testified that R.C. communicated with her on an average to above average level while M.C.'s interaction was slightly delayed. Johnson stated that, during their interview, R.C. said that Mason touched her both under and over her clothes. Johnson also testified that R.C. stated that Mason touched her vagina with his hand and penis and that he touched her breasts and butt with his hand. In addition, Johnson testified that R.C. said Mason made her touch his penis with her hand and her mouth. Johnson further testified that, during M.C.'s interview, M.C. told Johnson that Mason touched her vagina with his hands, penis, and mouth. Moreover, Johnson testified that M.C. stated that Mason touched her breasts with his hands and mouth and that he touched her butt with his hand.

¶10. At Mason's trial, the record reflects that M.C. and R.C. testified consistently to the

---

[3] Johnson stated that RATAC was an acronym for the forensic-interview protocol of rapport, anatomy, touch inquiry, abuse scenario, and closure.

same facts and information that they had given during their pretrial statements to Abby, Captain Luther, and Johnson. M.C. testified that Mason had touched her both under and over her clothes. She also testified that Mason touched her breasts with his hands and mouth; that he touched her vagina with his hands, mouth, and penis; and that he made her touch his penis with her mouth and hands. In her testimony, M.C. further stated that she also saw Mason inappropriately touching R.C. and that Mason made her touch R.C. on the breasts with her hands.

¶11.    R.C. testified at trial that Mason also touched her both under and over her clothes. According to R.C.'s testimony, Mason touched her vagina with his hands, mouth, and penis, and he touched her breasts with his hands and mouth. R.C. also testified that Mason put his penis in her mouth and that she saw Mason inappropriately touching M.C. on more than one occasion.

¶12.    During cross-examination of M.C. and R.C., the defense questioned the girls' truthfulness and attacked their credibility. The defense elicited testimony from both girls that they had previously been sexually abused by their older sister, Samantha, but that they had failed to tell anyone. The record shows that M.C. testified that Samantha had shown her cartoon pornography on the computer and had made M.C. perform oral sex on her. The record reflects that R.C. testified that Mason and Samantha both showed her pictures and videos of naked people. R.C. said that she failed to tell anyone about the sexual abuse by Samantha because she was young and scared. During cross-examination, R.C. admitted to

6

a laundry list of relatives, teachers, and others whom she never told about the abuse by Samantha. As the record reflects, R.C. further admitted that she did not even report the abuse to her school counselor even though she was going through counseling at the time.

¶13. During cross-examination, the defense also asked each girl whether she was simply making up the stories of sexual abuse by Mason. The defense elicited testimony from M.C. that her family had been kicked out of their house right before M.C. told Abby about Mason's abuse. The defense asked M.C. if being evicted from her home prompted her to make up the stories about Mason. Although M.C. admitted that she did not tell anyone about the abuse until her family was kicked out of the house, she denied making up any stories. The defense later asked M.C. whether she remembered telling Dr. Donald Matherne, a psychologist, that she lied sometimes. However, M.C. testified that she did not remember any meeting with Dr. Matherne.

¶14. Even though M.C. testified that the abuse had been occurring for a while, she stated that she was scared and did not tell anyone because her family still lived with Mason at the time. M.C. further testified that, when Mason would rub on her breasts, sometimes her mother was there but would ignore the behavior. M.C. also admitted that she did not tell anyone about the abuse even when Mason left the house for a few days. She testified that Mason had previously threatened and choked her, but she admitted that she had also never told anyone about those events. According to M.C., when she finally disclosed the abuse to Abby, she had not wanted Abby to tell anyone else.

7

¶15. During R.C.'s cross-examination, R.C. admitted that she had been upset that her family got kicked out of their home. The defense asked R.C. if she remembered her mother talking to her about how she could stay in the house. R.C. admitted that she recalled those conversations. The defense then asked if R.C. and her mother had come up with the plan to falsely accuse Mason of sexual assault. However, R.C. denied making up a plan to falsely accuse Mason to stay in the house.

¶16. Like M.C., R.C. testified during cross-examination that she did not remember seeing Dr. Matherne. Several times on cross-examination, R.C. denied ever discussing with M.C. their sexual abuse by Mason. R.C. repeatedly denied discussing the matter with her sister even though she had told doctors, counselors, therapists, and employees at both the Mississippi Department of Human Services and the district attorney's office.

¶17. Following M.C.'s and R.C.'s trial testimony, the State moved to admit the girls' pretrial statements into evidence under the tender-years exception. In first considering R.C.'s pretrial statements, the circuit court found R.C.'s statements to be consistent with each other and not too remote in time from Mason's alleged conduct. In addition, the circuit court found that R.C. had no motive to lie. The circuit court then found that a presumption of tender years applied to R.C., who was under the age of twelve at the time she made her pretrial statements to Johnson and Captain Luther. Over the defense's objection, the circuit court admitted R.C.'s pretrial statements into evidence.

¶18. The circuit court next considered the pretrial statements M.C. made to Abby, Johnson,

and Captain Luther. As the circuit court noted, M.C. was about two to three months past her twelfth birthday when she made the pretrial statements. After considering M.C.'s age, her maturity, the techniques used to interview her, and other relevant factors, the circuit court found M.C.'s statements to be credible. As a result, the circuit court also admitted M.C.'s pretrial statements into evidence over the defense's objection. As the record shows, prior to the circuit court's admission of the pretrial statements, the defense had the opportunity to attack M.C.'s and R.C.'s truthfulness about their claims of sexual abuse by Mason.

¶19. During the trial, the State also called Dr. Matherne to testify about hearsay statements M.C. and R.C. made to him. Dr. Matherne, a psychologist, interviewed M.C. and R.C. about the alleged sexual abuse and then recommended treatment based upon his observations and conclusions. The circuit court admitted Dr. Matherne's testimony about the hearsay statements after finding that the statements were made for medical diagnosis or treatment. *See* M.R.E. 803(4). The circuit court also accepted Dr. Matherne as an expert in the field of clinical psychology.

¶20. Dr. Matherne testified that he separately interviewed and evaluated M.C. and R.C. on April 5, 2012, to determine whether he could substantiate their allegations of sexual abuse by Mason. Dr. Matherne showed M.C. and R.C. anatomical drawings of a young girl to evaluate their claims of abuse. He testified that M.C. pointed to and circled the breasts, vagina, and butt of the girl on her drawing to indicate that Mason had touched her in those areas. Dr. Matherne testified that R.C. also pointed to and circled these areas on the girl in

9

her drawing.

¶21. Dr. Matherne stated that he also conducted intellectual and educational tests on each girl. Based on the test results, Dr. Matherne found that M.C.'s intelligence level was below average for a twelve-year-old and that she functioned at a first-grade spelling level, a second-grade reading level, and an upper third-grade level in arithmetic. Dr. Matherne testified that R.C.'s results indicated that she was of average intelligence with average levels of academic achievement. After observing the girls, Dr. Matherne concluded in his expert opinion that both girls displayed characteristics and behavior consistent with sexual abuse and would benefit from counseling.

¶22. Following Dr. Matherne's testimony, the State called Abby, Captain Luther, and Johnson to testify. All three witnesses testified consistently with the testimony they provided during the pretrial hearing. The State then rested.

¶23. During the defense's case-in-chief, Mason testified on his own behalf. Mason stated that, while he lived with the girls and their mother, he slept in the same bedroom as the girls' mother. Mason admitted that he had sex with the girls' mother a few times, but he stated that he never pursued any type of actual relationship with her. Mason also denied ever inappropriately touching M.C. or R.C. or ever exposing his genitals to the girls. According to Mason's testimony, he was never even alone with the girls.

¶24. At the conclusion of Mason's trial, the jury found Mason guilty of four counts of touching a child for lustful purposes, and the circuit court declared a mistrial as to the

remaining charges. The circuit court sentenced Mason as a habitual offender to four life sentences, with the sentences in Counts IV and V to run concurrently with one another, and with the sentences in Counts IX and X to run concurrently with one another and consecutively to the sentences in Counts IV and V. Mason then filed an unsuccessful motion for a new trial or, in the alternative, a judgment notwithstanding the verdict. Aggrieved by the circuit court's judgment, Mason appeals.

## DISCUSSION

¶25. Mason argues that the circuit court abused its discretion by admitting M.C.'s and R.C.'s pretrial statements under the tender-years exception. Mason claims that the circuit court admitted the hearsay statements without first discussing or fully evaluating the relevant factors, such as whether the statements possessed substantial indicia of reliability. Mason further asserts that the hearsay statements prejudiced him by impermissibly bolstering the credibility of M.C.'s and R.C.'s testimony. Based on the circuit court's alleged error, Mason asks this Court to reverse his convictions and sentences and to remand the case for a new trial.

¶26. We review for abuse of discretion a party's claim that the circuit court erred by admitting hearsay. *Nunnery v. State*, 126 So. 3d 105, 109 (¶9) (Miss. Ct. App. 2013).[4] Hearsay encompasses any statement made by the declarant, while not testifying at the current

---

[4] *See also Hobgood v. State*, 926 So. 2d 847, 853 (¶16) (Miss. 2006) (discussing hearsay and the standard of review applied to the admission of evidence); *Clark v. State*, 891 So. 2d 136, 139 (¶11) (Miss. 2004) (recognizing that the appellate courts review the admission or exclusion of evidence for abuse of discretion).

trial or hearing, that a party offers into evidence to prove the truth of the matter asserted.

M.R.E. 801(c).

¶27.    Rule 803(25) of the Mississippi Rules of Evidence provides the tender-years exception

to the hearsay rule and states the following:

> A statement by a child of tender years describing any act of sexual contact with
> or by another is admissible if: (A) the court—after a hearing outside the jury's
> presence—determines that the statement's time, content, and circumstances
> provide substantial indicia of reliability; and (B) the child either: (i) testifies;
> or (ii) is unavailable as a witness, and other evidence corroborates the act.

¶28.    Our caselaw further provides:

> For the trial court to determine if a young declarant's out-of-court statement
> is admissible under the tender-years exception, the court must determine (1)
> that the declarant is a child of tender years and (2) that the time, content, and
> circumstances of the statement provide substantial indicia of reliability.  The
> Mississippi Supreme Court [has] found that there is a rebuttable presumption
> that a child under the age of twelve is of tender years.  When the child
> declarant is twelve or older, the presumption does not apply, but the trial court
> must make a case-by-case determination as to whether the declarant is of
> tender years.  This determination should be made on the record and based on
> a factual finding as to the declarant's mental and emotional age.

*Nunnery*, 126 So. 3d at 109 (¶11) (internal citation omitted).

¶29.    The comment to Rule 803(25) provides the following nonexhaustive list of factors for

a circuit court to consider to determine whether a statement possesses sufficient indicia of

reliability:

> (1) whether there is an apparent motive on [the] declarant's part to lie; (2) the
> general character of the declarant; (3) whether more than one person heard the
> statements; (4) whether the statements were made spontaneously; (5) the
> timing of the declarations; (6) the relationship between the declarant and the
> witness; (7) the possibility of the declarant's faulty recollection is remote; (8)

12

certainty that the statements were made; (9) the credibility of the person testifying about the statements; (10) the age or maturity of the declarant; (11) whether suggestive techniques were used in eliciting the statement; and (12) whether the declarant's age, knowledge, and experience make it unlikely that the declarant fabricated.

M.R.E. 803(25) cmt.

¶30. Upon review of this assignment of error, we acknowledge that both M.C. and R.C. testified at trial and were subjected to cross-examination by the defense.[5] As the record reflects, following M.C.'s and R.C.'s trial testimony, the State renewed its motion to admit the girls' pretrial statements into evidence under the tender-years exception. The circuit court then conducted a hearing outside the jury's presence.[6] During the hearing, the State argued that the girls' statements possessed the required indicia of reliability and should be considered as falling within the tender-years exception to hearsay under Rule 803(25).

¶31. After considering the parties' arguments and applicable caselaw, the circuit court rendered on-the-record factual findings that reflected the court found the girls' testimony credible and reliable. The circuit court also found that both girls were of tender years when they made their pretrial statements.[7] As a result, the circuit court granted the State's motion.

___

[5] *See Elkins v. State*, 918 So. 2d 828, 832 (¶12) (Miss. Ct. App. 2005) ("[T]he [C]onfrontation [C]lause is violated when a hearsay declarant is available to testify at the trial, but does not do so, and the defendant lacked an opportunity to cross-examine the declarant on a prior occasion." (citation omitted)).

[6] *See Bishop v. State*, 982 So. 2d 371, 375 (¶16) (Miss. 2008) (noting that the trial judge conducted the required Rule 803(25) hearing outside the presence of the jury).

[7] In *Elkins*, this Court stated:

13

¶32. The circuit court first addressed whether to admit R.C.'s testimony. The circuit court determined that R.C. was ten years old at the time she made the statements to Johnson and Captain Luther.[8] The circuit court found that R.C. appeared to know the difference between right and wrong and that she possessed no apparent motive to lie.[9] The circuit court also found that R.C. had no relationship with Johnson or Captain Luther prior to making the statements.

¶33. In making its factual findings, the circuit court evaluated R.C.'s age, maturity, and intelligence and considered the interview techniques used to question R.C. Although not all R.C.'s statements to Johnson and Captain Luther were spontaneous, the circuit court concluded that no suggestive techniques were used to elicit R.C.'s statements. In addition, the circuit court determined that R.C.'s statements were factually consistent with each other and were vivid as to what had occurred. Based on these findings, the circuit court held that

> In assessing whether the tender[-]years exception applies, the trial court should consider the age of the child at the time the statement was made, not the age of the child at the time of the trial. . . . There is a rebuttable presumption that a child under the age of twelve is of tender years. When an alleged sex[-]abuse victim is age twelve or older, the trial court must make a case-by-case determination of whether the alleged victim was of tender years based on a factual finding as to the victim's mental and emotional age.

*Elkins*, 918 So. 2d at 833 (¶15) (internal citations and quotation marks omitted).

[8] *See Veasley v. State*, 735 So. 2d 432, 436 (¶16) (Miss. 1999) (holding that a rebuttable presumption exists that a child under twelve years old is of tender years).

[9] Mississippi caselaw holds "that a child's delay in reporting . . . abuse is excusable if the delay was caused by fear 'or other equally effective circumstances.'" *Elkins*, 918 So. 2d at 834 (¶18) (quoting *Veasley*, 735 So. 2d at 436 (¶11)).

14

R.C.'s pretrial statements possessed sufficient indicia of reliability and that R.C. was of tender years when she made the statements. As a result, the circuit court admitted R.C.'s pretrial statements to Johnson and Captain Luther under the tender-years exception to hearsay.

¶34. In next discussing M.C.'s pretrial statements, the circuit court acknowledged that M.C. was two to three months past her twelfth birthday when she made the statements. The circuit court then conducted a balancing test to determine whether M.C. fell within the tender-years exception of Rule 803(25). *See Elkins*, 918 So. 2d at 833 (¶15) ("When an alleged sex[-]abuse victim is age twelve or older, the trial court must make a case-by-case determination of whether the alleged victim was of tender years 'based on a factual finding as to the victim's mental and emotional age.'" (quoting *Veasley*, 735 So. 2d at 437 (¶16))). From the testimony provided, the circuit court found that M.C. had received special education, that she lacked communicative skills, and that her development was delayed. However, the circuit court also found that M.C. seemed to know the difference between right and wrong and that she possessed no apparent reason to lie. Based on M.C.'s age, knowledge, and experience, the circuit court found that M.C. was of tender years.

¶35. Although M.C. possessed a personal relationship with Abby, to whom M.C. first spontaneously disclosed the abuse, the circuit court determined that M.C. had only a strictly professional relationship with Johnson, Captain Luther, and Dr. Matherne. The circuit court found that M.C. had no reason to lie to the forensic interviewer, the police officer, or the

15

psychologist and that she made the statements to these individuals soon after her initial disclosure of the molestation to Abby. The circuit court further concluded that, although M.C.'s statements to Johnson, Captain Luther, and Dr. Matherne were not spontaneous, no suggestive techniques were used to question her. In addition, the circuit court found that established protocols were used during the interviews. Based on its findings, the circuit court concluded that M.C.'s statements were credible and that she was of tender years. As a result, the circuit court admitted M.C.'s pretrial statements into evidence.

¶36. In the recent case *Tubbs v. State*, 185 So. 3d 363, 365 (¶1) (Miss. 2016), the supreme court considered the defendant's argument that "the trial court erred in admitting the child victim's testimony as well as a hearsay statement made by the victim to her grandmother." Like Mason, Tubbs was indicted, tried, and found guilty of child molestation. *Id.* The supreme court found that "the sole issue [was] whether the time, content, and circumstances of the statement provide[d] substantial indicia of reliability." *Id.* at 367 (¶11) (citation omitted).

¶37. Although Tubbs argued the trial court erred by failing to use the specific words "substantial indicia of reliability" in making its factual findings about the admissibility of the child's hearsay statement, the supreme court disagreed. *Id.* at 367-68 (¶¶12-13). The supreme court instead found that "the trial court's evidentiary hearing contain[ed] more than sufficient findings on the record." *Id.* at 368 (¶13). Thus, even though the trial court failed to use the specific words "substantial indicia of reliability," the supreme court found no abuse

16

of discretion by the trial court in allowing the grandmother's testimony about the child's hearsay statement under Rule 803(25)'s tender-years exception. *Id.*

¶38. Like the *Tubbs* court, we find no abuse of discretion in the present case from the circuit court's decision to admit M.C.'s and R.C.'s pretrial statements under the tender-years exception. The record reflects that the circuit court rendered sufficient findings on the record to conclude that the time, content, and circumstances of M.C.'s and R.C.'s pretrial statements provided substantial indicia of reliability. *See id.* at 367-68 (¶¶12-13); *Nunnery*, 126 So. 3d at 109 (¶11).

¶39. As previously discussed, the comment to Rule 803(25) provides a nonexhaustive list of factors for a circuit court to consider when determining whether a statement possesses sufficient indicia of reliability. *See also Bishop v. State*, 982 So. 2d 371, 376 (¶17) (Miss. 2008) (identifying the nonexhaustive list of factors). Like the trial court in *Bishop*, the circuit court in this case provided findings that addressed the nonexhaustive list of factors to determine whether the girls' pretrial statements possessed sufficient indicia of reliability. After reviewing the record, we find substantial evidence to support the circuit court's determination that M.C.'s and R.C.'s statements were credible and, thus, possessed sufficient indicia of reliability. *See id.* at 378 (¶25).

¶40. The record reflects that M.C.'s spontaneous disclosure to Abby was clearly nontestimonial. Abby was a childhood friend and was not law enforcement. Nontestimonial statements do not trigger the protections of the Confrontation Clause. *Id.* at 375 (¶14).

17

Furthermore, the testimony by Johnson and Captain Luther provided evidence of M.C.'s and R.C.'s pretrial statements that was consistent with other testimony admitted at trial.

¶41. In addition, the record reflects that the circuit court admitted the girls' pretrial statements only after the defense attacked M.C.'s and R.C.'s truthfulness and veracity during cross-examination. As the record reflects, the defense accused the girls on cross-examination of planning with their mother to falsely accuse Mason of sexual abuse after they were kicked out of the home where they were staying. However, the jury retained responsibility for evaluating M.C.'s and R.C.'s credibility as witnesses and determining whether events happened as the girls described. *See Whitehead v. State*, 187 So. 3d 1091, 1097 (¶17) (Miss. Ct. App. 2016).

¶42. Regarding attacks upon a witness's credibility at trial, in *Smith v. State*, 925 So. 2d 825, 836-37 (¶28) (Miss. 2006), the supreme court acknowledged that statements admissible under Rule 801(d)(1)(B) of the Mississippi Rules of Evidence are not hearsay by rule. Rule 801(d)(1)(B) permits the admission of prior consistent statements to rebut assertions of fabrication and improper motive or influence. As acknowledged, the circuit court here only admitted testimony about M.C.'s and R.C.'s pretrial statements after the defense asserted during its cross-examination of the girls that they possessed an improper motive for their allegations against Mason and had fabricated the allegations.

¶43. Upon review, we find no abuse of discretion by the circuit court's admission of M.C.'s and R.C.'s pretrial statements into evidence. The record reflects that the defense had the

opportunity to cross-examine the girls about whether they fabricated the story of sexual abuse after they were kicked out of their home. As we have already acknowledged, the admission of testimony is left to the sound discretion of the circuit court, and we will only find error where the circuit court abuses that discretion. *Bishop*, 982 So. 2d at 375 (¶15).[10] Moreover, the girls' statements to Dr. Matherne, the psychologist, were also admissible under Rule 803(4) of the Mississippi Rules of Evidence. *See Penny v. State*, 960 So. 2d 533, 539 (¶18) (Miss. Ct. App. 2006) (finding no abuse of discretion by the admission of a child victim's statements to a Department of Human Services counselor where the child was responding to open-ended questions). We therefore find no merit to Mason's claim that the admission of the pretrial statements improperly bolstered M.C.'s and R.C.'s trial testimony.

¶44.    We similarly find no merit to Mason's argument that cumulative error deprived him of his right to a fair and impartial trial. The appellate court "may reverse a conviction and sentence based upon the cumulative effect of errors that independently would not require reversal. However, where there was no reversible error in any part, so there is no reversible error to the whole." *Genry v. State*, 735 So. 2d 186, 201 (¶73) (Miss. 1999) (internal citations and quotation marks omitted).

¶45.    Although Mason's appellate brief recites a list of alleged errors, which Mason argues

---

[10] *See also Smith v. State*, 25 So. 3d 264, 273-74 (¶28) (Miss. 2009) (affirming the circuit court's erroneous admission of statements because the statements were admissible under a different evidentiary rule and the right result was therefore reached); *Smith*, 925 So. 2d at 837 (¶29) ("[W]hether the statements were admitted under [Rule] 801(d)(1)(B) or 803(25) is of no consequence, as the statements are admissible.").

amounted to cumulative error, he fails to fully develop his various allegations or to cite supporting caselaw for any of his assertions.[11]  Because Mason fails on appeal to show any individual errors, we find no cumulative error that would warrant the reversal of his convictions.

## CONCLUSION

¶46.   Based upon the foregoing, we find no abuse of discretion by the circuit court's admission of M.C.'s and R.C.'s pretrial statements into evidence after the girls testified in this case.  Furthermore, we find no cumulative error that requires the reversal of Mason's convictions and sentences.  As a result, we affirm the circuit court's judgment.

¶47.   **THE JUDGMENT OF THE HANCOCK COUNTY CIRCUIT COURT OF CONVICTION OF FOUR COUNTS OF TOUCHING A CHILD FOR LUSTFUL PURPOSES AND SENTENCES ON EACH COUNT AS A HABITUAL OFFENDER OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THE SENTENCES IN COUNTS IV AND V TO RUN CONCURRENTLY WITH ONE ANOTHER, AND WITH THE SENTENCES IN COUNTS IX AND X TO RUN CONCURRENTLY WITH ONE ANOTHER AND CONSECUTIVELY TO THE SENTENCES IN COUNTS IV AND V, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HANCOCK COUNTY.**

     **LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR.**

---

[11] *See Miller v. State*, 144 So. 3d 199, 203 (¶15) (Miss. Ct. App. 2014) ("It is well-settled law that[,] if an appellant fails to support [his] allegation of error with argument or authority, this Court need not consider the issue." (citation and internal quotation marks omitted)).