# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-00161-COA

**THOMAS HARRISON A/K/A THOMAS EUGENE HARRISON**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                    **APPELLEE**

DATE OF JUDGMENT:                    12/21/2020
TRIAL JUDGE:                    HON. DAL WILLIAMSON
COURT FROM WHICH APPEALED:                    JONES COUNTY CIRCUIT COURT,
                    FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:                    OFFICE OF STATE PUBLIC DEFENDER
                    BY: GEORGE T. HOLMES
ATTORNEY FOR APPELLEE:                    OFFICE OF THE ATTORNEY GENERAL
                    BY: LAUREN GABRIELLE CANTRELL
DISTRICT ATTORNEY:                    ANTHONY J. BUCKLEY
NATURE OF THE CASE:                    CRIMINAL - FELONY
DISPOSITION:                    AFFIRMED - 11/09/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE CARLTON, P.J., LAWRENCE AND EMFINGER, JJ.

### EMFINGER, J., FOR THE COURT:

¶1.    On July 16, 2019, a Jones County grand jury indicted Thomas Harrison for possession of contraband in a correctional facility pursuant to Mississippi Code Annotated section 47-5-198 (1) (Rev. 2015).  After a jury trial on December 16, 2020, Harrison was found guilty and was sentenced to a term of seven years in the custody of the Mississippi Department of Corrections (MDOC), with four years to serve and the remaining three years suspended on the condition of the successful completion of two years of post-release supervision (PRS). Harrison challenges his conviction on appeal.

## FACTS AND PROCEDURAL HISTORY

¶2. On April 5, 2018, Harrison was arrested by the Laurel police department for possession of marijuana during a vehicle stop. Harrison voluntarily told law enforcement that he had marijuana in his shoe and claimed that there were no other drugs on his person. Harrison was arrested and transported to the Jones County Adult Detention Facility in Ellisville, Mississippi (detention facility).

¶3. On the day of Harrison's arrest, Correctional Sergeant Hilmon Gainey was responsible for "dressing out" inmates as they were brought into the detention facility. Gainey testified that during the "dressing out" process, a prisoner is required to remove all clothing so that it can be searched for contraband. Gainey testified that prior to Harrison's "dressing out," he asked Harrison "if he had anything on him," and Harrison replied that he did not. According to Gainey, he collected each article of Harrison's clothing and put them in a blue clothing bag. He testified that "when I got to his sock, I started turning his socks inside out, and that's when a white clear bagg[ie] hit the ground, . . . containing a white substance. . . . I believed it was meth." After he discovered the baggie in Harrison's sock, Gainey called Robert Little, the on-call narcotics officer, for further instructions. Lieutenant Little advised Gainey to call dispatch and get a deputy to come retrieve the evidence. Gainey called dispatch, and Deputy Drew Moorecraft retrieved the evidence from the jail.

¶4. On July 16, 2019, Harrison was indicted for possession of contraband in a correctional facility. On February 13, 2020, Harrison filed a motion to dismiss for destruction of evidence. Harrison claimed that an alleged video of his "dressing out" at the detention center

on April 5, 2018, was destroyed, and as a result, his case should be dismissed with prejudice. After a hearing on February 28, 2020, an order denying Harrison's motion to dismiss was entered on March 5, 2020.[1]  Harrison's case proceeded to trial on December 16, 2020, and the jury found Harrison guilty as charged.  On December 17, 2020, Harrison filed a "motion for judgment notwithstanding the verdict [(JNOV)] or in the alternative, for a new trial or re-sentencing."  Harrison's motion was denied in an order entered on February 2, 2021. Aggrieved by the verdict and the order denying his post-trial motion, Harrison appealed. Finding no error by the trial court, this Court affirms.

## STANDARD OF REVIEW

¶5.     "The admissibility of evidence and competency determinations are left to the sound discretion of the trial court."  *Tubbs v. State*, 185 So. 3d 363, 367 (¶9) (Miss. 2016).  More specifically, "matters regarding the chain of custody of evidence are largely within the discretion of the trial court . . . ."  *Anderson v. State*, 904 So. 2d 973, 979 (¶19) (Miss. 2004). "[S]o long as [the trial] court exercises that discretion by reference to the correct legal standards, we will not reverse absent substantial abuse of discretion."  *Butler v. State*, 592 So. 2d 983, 986 (Miss. 1991).  "This Court will affirm the trial court's ruling unless it can safely say that the trial court abused its discretion in allowing or disallowing evidence to the prejudice of the accused."  *Tubbs* 185 So. 3d at 367 (¶9).  Finally, in *Hunt v. State*, 81 So. 3d 1141, 1146 (¶19) (Miss. Ct. App. 2011), this Court held:

> [I]n determining an issue of whether the weight of the evidence supports a verdict, the standard of review is that an appellate court will only disturb a

---

[1] The alleged destruction of a video was not raised as an issue on appeal.

verdict if the verdict is so contrary to the overwhelming weight of the evidence that to allow the verdict to stand would sanction an unconscionable injustice.

## ANALYSIS

¶6. Harrison first argues that the State failed to properly establish a chain of custody of the contraband allegedly found in his sock, and as a result, the trial court abused its discretion by admitting the contraband into evidence. Harrison asserts in his brief that

> there was never any evidence offered for any chain of custody. The State never presented evidence indicating how Exhibit S2 traveled from the "dress-out" area of the Jones County jail on April 5, 2018, to the Sheriff's department and then to the Mississippi Crime lab in Meridian and then back to the Sheriff's office and then to Harrison's trial.

He claims that the evidence presented at trial created a reasonable inference of tampering or substitution. Secondly, Harrison asserts that because the alleged contraband should not have been admitted into evidence at trial, the remaining evidence was insufficient to support the conviction, and therefore the verdict was contrary to the weight of the evidence.

### I.    Chain of Custody of the Evidence

¶7. According to Mississippi Rule of Evidence 901(a), "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." In *Butler*, 592 So. 2d at 985, the Mississippi Supreme Court stated that "Rule 901 (a) does not expressly require that a proponent prove a chain of custody, though it remains one avenue to Rule 901(a) identification." Further, the law does not require "the proponent to produce every person who handled the object, nor to account for every moment of every day." *Id*. The supreme court has consistently held that the "test for the continuous possession [(i.e., 'chain

4

of custody')] of evidence is whether or not there is any indication or reasonable inference of probable tampering with the evidence or substitution of the evidence." *Anderson*, 904 So. 2d at 979 (¶19). The "mere suggestion that substitution could possibly have occurred does not meet the burden of showing probable substitution." *Tubbs*, 185 So. 3d at 369 (¶19). Finally, where there is an allegation of tampering or substitution of evidence, "the presumption of regularity supports the official acts of public officers." *Nix v. State*, 276 So. 2d 652, 653 (Miss. 1973).

¶8.     Gainey testified that he found the alleged contraband in Harrison's sock during the "dressing-out" process. Gainey then called Lieutenant Little and advised him of what he had discovered. Little instructed Gainey to call dispatch and get a deputy to come retrieve the evidence. An incident report created by Gainey and dated April 5, 2018, corroborated his testimony and was introduced into evidence as State's Exhibit 1. Deputy Drew Moorecraft was identified as the deputy who retrieved the evidence from the detention facility.[2] Gainey was presented with a bag containing a white substance, and based on the markings on the bag, Gainey identified the bag to be the same bag that he retrieved from Harrison's sock. Over Harrison's objection, the bag was introduced as State's Exhibit 2.

---

[2] Pursuant to a letter from the trial court reporter dated June 18, 2021, which was filed with this Court, the initial transcript was corrected and supplemented to change the word "him" to the word "it" on page 79, line 11. The letter indicates that the supplementation was made at the request of the trial court judge. The change was made after the appellant's brief was filed, and the corrected transcript page was substituted in for the original transcript page. The appellant relied upon the original transcript language in his brief, and while the appellant takes issue with the supplementation process in his reply brief, he did not file any subsequent motions for relief. The trial transcript in the appellate record contains the supplemented language and will be considered by this Court accordingly.

¶9.     The State called Keith McMahan as its second witness. McMahan was employed by the Mississippi Forensics Laboratory and worked at the Meridian regional branch of that facility. Before he began to testify, Harrison's counsel objected to McMahan's testimony, arguing the absence of a "proper foundation" and "lack of proper chain of custody." After argument by both parties on the merits of the objection, the following exchange occurred:

THE COURT:      Let me see the report.

MS. MARTIN:     You want the lab report?

THE COURT:      I want to see all that's in evidence. . . . The evidence reflects that Hilmon Gainey after the clear bagg[ie] fell out on the floor in front of him – he retrieved it, finished his dress out, notified Lieutenant Little, who [is] the investigator. Little then advised him to call dispatch and get a deputy to retrieve the evidence. There was testimony . . . in fact, he was asked about it on cross-examination about Moorecraft. And that he was asked a question if Moorecraft was just not the one that transports . . . I think he used the word "transporter." The bag is signed by Deputy Drew Moorecraft, dated April 5, 2018. I do not find that there's evidence of a breakdown in the chain of custody. Based on that, the objection is overruled.

After the objection was overruled, McMahan proceeded to testify on direct examination that he was not the person who received the sample from the Jones County Sheriff's Department on April 25, 2018; however, he was the one who performed the tests to determine if the white crystalline substance contained methamphetamine or any other controlled substance. McMahan testified that it was Stephanie Baskin's job at the lab to receive samples for testing and she is the one who received the sample in the current case. McMahan testified that upon receipt, Baskin would have given the sample a unique submission number, entered it into the

6

computer, created a barcode with that information, placed the barcode on the evidence, and then the evidence would have gone into the vault where it would remain until it was ready for testing. As a result of the tests he performed, McMahan testified that the sample contained methamphetamine in the amount of 0.456 gram.

¶10. Harrison was the only other witness to testify at trial. He countered the State's witnesses by stating that he did not have any contraband on his person when he arrived at the detention facility on April 5, 2018. Harrison asserts that there is no possible way that anything could have been found in his sock because he was not wearing socks at the time of the arrest. According to Harrison, he saw five other people go into the "dress-out" room before him and that there were other clothes in the room besides his own. He testified that he did not know if the contraband belonged to one of the other five people previously "dressed-out" in the room, but he knew the drugs were not his.

¶11. Harrison argues that the testimony was insufficient to establish an unbroken chain of custody. However, the dates, signatures and other markings on the exhibit, when considered with the testimony of the State's two witnesses, accounted for each person who took possession of the evidence from the time it was found until the time it was tested. As discussed in the paragraphs above, it is not necessary for the State to produce every person who handled the evidence to successfully prove chain of custody. In *Lambert v. State*, 462 So. 2d 308, 313 (Miss. 1984), the Mississippi Supreme Court held that "the failure of the State in the case at bar to produce the actual crime lab employees who received exhibits S-18 and S-22 does not render the evidence inadmissible."

¶12. Further, Harrison produced no proof to show an "indication or reasonable inference of probable tampering with the evidence or substitution of the evidence" in this case. *Anderson*, 904 So. 2d at 979 (¶19). In *Portis v. State*, 245 So. 3d 457, 464, 473 (¶¶12, 42 (Miss. 2018), the supreme court dealt with a similar issue:

> On April 6, 2015, a search warrant was issued for Portis's urine. Sergeant Madison took Portis to LabCorp, where his urine was collected. LabCorp tested his urine for trichomoniasis, and the result was positive. Donna Vestal, the manager of molecular microbiology and virology at LabCorp, testified that she reviews the testing of urine specimens. She testified that Portis's test for trichomoniasis was positive.
>
> . . . .
>
> Fourth, Portis argues that the chain of custody of his urine was not proven. The test regarding the chain of custody is whether an indication or reasonable inference exists "of probable tampering with the evidence or substitution of the evidence." *Tubbs v. State*, 185 So. 3d 363, 369 (Miss. 2016) (internal quotations omitted). A presumption of regularity applies to the actions of the public officers, and the defendant bears the burden of producing evidence that the chain of custody has been broken. *Id.* A mere suggestion of substitution does not meet this burden. *Id*. Moreover, it is unnecessary that every handler of the evidence testify. *Id*. Tonya Madison testified that she escorted Portis to LabCorp, and a LabCorp employee testified as to the results. The State offered no evidence of what occurred in between, and it certainly could have done a more thorough job showing the chain of custody. However, Portis does not provide any evidence at all that the chain of custody was broken, and no reasonable inference is made here that the evidence was tampered with or substituted. Portis has failed to meet his burden, and makes only a mere suggestion that all we can know is that "someone's" urine was tested. Viewing the chain of custody testimony in the light most favorable to the verdict, it cannot be said that the verdict is so contrary to the overwhelming weight of the evidence that it amounts to an unconscionable injustice.

In the present case, everyone who possessed the contraband was identified, and each person's actions were explained. As in *Portis*, while the State could have "done a more thorough job of showing the chain of custody," there is no evidence of any break in the chain of custody,

8

and Harrison offered no reasonable inference of tampering. Harrison testified that the drugs could not possibly have been found in his sock because he was not wearing socks at the time of his arrest, and there were other individuals' clothes present in the "dress-out" room. This testimony does not really challenge the chain of custody of the contraband; instead, it challenges the truthfulness of Gainey's testimony as to where he found the contraband. Such testimony does not suggest that the contraband was tampered with or that another substance was substituted for the substance found in Harrison's sock. It challenges whether the contraband was found in Harrison's sock. This Court finds that the trial court did not abuse its discretion in allowing State's Exhibit 2 to be admitted into evidence and considered by the jury. Therefore, any contention of insufficient evidence based on Harrison's argument is meritless.

## II. Weight of Evidence

¶13. Harrison argues that because State's Exhibit 2 should not have been admitted into evidence, there was no other evidence to support his conviction, and therefore, the verdict was contrary to the weight of the evidence. Because we find no abuse of discretion by the trial court in admitting State's Exhibit 2 into evidence, Harrison's argument that the jury's verdict was contrary to the weight of the evidence is without merit.

## CONCLUSION

¶14. After reviewing the record, we find that the trial court did not abuse its discretion in admitting State's Exhibit 2 into evidence. Therefore, Harrison's claim that the jury verdict was contrary to the weight of the evidence has no merit. Harrison's conviction and sentence

9

are affirmed.

¶15. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR.**