# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-KA-00493-SCT

*CHRISTOPHER BRIAN SHEELY a/k/a*
*CHRISTOPHER SHEELY a/k/a CHRISTOPHER B.*
*SHEELY*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 03/14/2023 |
| TRIAL JUDGE: | HON. JON MARK WEATHERS |
| TRIAL COURT ATTORNEYS: | LAURA KE'YUANA COOPER |
| | MATTHEW DAVIS SHOEMAKER |
| | JAMES LEWIS LANE, JR. |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: W. DANIEL HINCHCLIFF |
| |     GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BARBARA BYRD |
| DISTRICT ATTORNEY: | PATRICIA A. THOMAS BURCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 07/25/2024 |
| MOTION FOR REHEARING FILED: | |


**BEFORE RANDOLPH, C.J., ISHEE AND GRIFFIS, JJ.**

**RANDOLPH, CHIEF JUSTICE, FOR THE COURT:**

¶1. In 2023, Christopher Sheely was convicted under Mississippi Code Section 41-29-139(c) for feloniously possessing more than one-tenth gram but less than two grams of methamphetamine. He was sentenced to serve two years in the custody of the Mississippi Department of Corrections (MDOC) with the remainder suspended for post-release

supervision upon completion of the MDOC Long Term Therapeutic Community Drug and Alcohol Program. On appeal, Sheely contends that: (1) the trial court erred by denying his proposed broken chain of custody jury instruction, and (2) the evidence presented was insufficient to support the jury's verdict that Sheely intentionally possessed a felony amount of a controlled substance. We affirm.

## FACTS & PROCEDURAL HISTORY

¶2. On May 28, 2020, around 5:00 p.m., Officer Kenny Woodward, as he was leaving the Forrest County Sheriff's Office at the conclusion of his shift, approached a stop sign on Arena Drive before making a right turn onto Highway 49 northbound and observed a vehicle driving on the highway with what Woodward believed to be an expired tag. Woodward entered the highway and sped up to the vehicle. He was able to confirm that the tag was indeed expired. He then initiated a traffic stop.

¶3. The vehicle pulled over on Sullivan Drive, the next drive north of Arena Drive. Woodward approached the driver of the vehicle. The driver, Christopher Sheely, offered that he knew his tag was expired. Three other passengers were also in the vehicle. Sheely did not have his driver's license on his person. Woodward asked Sheely to step out of the vehicle.[1] While outside the vehicle, Woodward noticed that Sheely kept sticking his hand in his left pocket. After the fourth such occurrence, Woodward questioned Sheely about his pocket. Upon receiving no answer and becoming concerned that Sheely could potentially

---

[1]Woodward ran a check on Sheely's name and confirmed that Sheely did possess a valid driver's license.

have a weapon, Woodward conducted a *Terry* pat down.[2]

¶4.    Sheely put his hands on the rear of his vehicle. Woodward testified that

> [a]s I walked up to him to the rear of him going to do the search, his left pants pocket was lo[o]se, it was baggy and open. And without having to touch him or look at him, you could look in the pocket and see a small plastic bag. It had a red stripe on it. And in that red plastic bag you could look and see a white crystal substance in it.

Woodward removed the bag and put it on the trunk of Sheely's vehicle; then, Woodward placed Sheely under arrest.

¶5.    Woodward testified that after the arrest was completed, Sheely "told me . . . that that was not a felony amount of meth. He said it was less than a tenth of a gram and it was not illegal." At that point, two additional officers arrived. Woodward placed Sheely and the red-stripe bag in his patrol vehicle and transported him to the Forrest County jail.

¶6.    Sheely was not the only occupant of the vehicle arrested during Woodward's traffic stop. Woodward testified that once Sheely had been secured in his patrol car, he asked the other passengers to exit the vehicle. When one of the passengers, Brandy Ledet, exited the vehicle, Woodward testified that "this rock or crystalline rock, whatever you want to call it,

---

[2]Sheely does not challenge the search in this appeal. In *Terry v. Ohio*, the United States Supreme Court held that there is no Fourth Amendment violation when a law enforcement officer conducts

> [A] reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

*Terry v. Ohio*, 392 U.S. 1, 27, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

was in her lap. And as she exited the vehicle, it fell to the ground." The rock was seized, and Ledet was arrested. Additionally, Woodward found a clear bag of marijuana under the rear seat of the vehicle that was attributed to Sheely as the owner of the vehicle.

¶7.    While booking Sheely at the jail, Woodward testified that the red-stripe bag remained locked inside of his patrol vehicle. Upon completing the booking process, Woodward drove a short distance to the sheriff's office where he took the red-stripe bag with him into the report room and completed the requisite paperwork. Woodward testified that the red-stripe bag was placed inside of a larger evidence bag, which Woodward then placed inside a temporary evidence locker.

¶8.    Six bags in total are relevant to Sheely's appeal. The first bag was the small plastic bag with a red stripe taken from Sheely's pocket that contained a "white crystalline substance." The red-stripe bag was then placed inside of a larger, sealed blue evidence bag, the second bag. The third bag was the clear plastic bag of marijuana found under the rear seat of the vehicle. That bag of marijuana was put inside a separate evidence bag that was also sealed, the fourth bag. Both individual sealed evidence bags were placed inside of one larger evidence bag, the fifth bag. Lastly, the crystalline rock that fell from Ledet's lap was placed in its own evidence bag, the sixth bag, and was not included inside of the larger evidence bag containing the controlled substances attributed to Sheely. Both the larger evidence bag and Ledet's evidence bag were stored inside temporary evidence locker number six. Once inside the temporary evidence locker, the bags were not removed until the following week when the evidence technician transferred the contents to the normal evidence

4

room.

¶9. Each temporary locker had a padlock—the procedure was to find an available locker, open the door, put the evidence in, close the door, and lock the padlock to secure it. Once locked, only the evidence technician possessed a key to the locker. Woodward testified that Ledet's rock was never contained in the same bag as the others. Further, he testified that the red-stripe bag was sealed and was unopened throughout the arrest and placement inside the evidence locker.

¶10. Officer Herrin was in charge of a narcotics enforcement team on May 28, 2020. It was his responsibility to ensure that the narcotics obtained were processed correctly to be sent to the Mississippi Crime Lab. Regarding the policy of the crime lab, Herrin testified that the lab would not accept different narcotics mixed together in the same bag; every exhibit had to be its own drug and brought in its own bag. The crime lab also required that the substances be delivered in a heat-sealed bag.

¶11. Herrin testified that evidence bags are made to be sealed and that "[t]he bag that I received from Forrest County showed no sign of tampering or anything like that." Herrin followed the required procedures, cutting open each separate evidence bag and putting each individual controlled substance, the methamphetamine recovered from Sheely's pocket, the marijuana found in his vehicle, and the crystalline rock found on Ledet, into its own separate heat-sealed bag. He then delivered each heat-sealed bag to the crime lab.

¶12. Laura Fulks, drug analyst and technical reviewer for Mississippi Forensics Laboratory in Biloxi, testified that when the crime lab receives evidence from law enforcement agencies,

5

the substances are assigned a case number, checked for seal integrity, and retained in secure vaults until assigned to a case analyst. Fulks was the case technical reviewer for the three submissions brought by Herrin. The methamphetamine recovered from Sheely's person was submission number three, while the substance attributed to Ledet was identified as submission one and the marijuana found in the rear of Sheely's vehicle as submission two. The results of the crime lab's testing revealed that submission three, the white crystalline substance recovered from Sheely's pocket, was methamphetamine and weighed 0.157 grams.

¶13. Sheely was indicted for possession of a controlled substance under Mississippi Code Section 41-29-139(c). He stood trial on March 13, 2023. After the State's case-in-chief, Sheely moved for a directed verdict. The trial judge denied his motion. Before closing arguments, Sheely proposed jury instruction D-7, which read:

> The Court instructs you that the test for continuous possession of evidence by the State, known as chain of custody of evidence, is whether or not there is any indication or reasonable inference of probable tampering with the evidence or substitution of the evidence. The proponent of the evidence must show no reasonable inference of material tampering with, or substitution of, the evidence; however, Mississippi law has never required a proponent of evidence to produce every handler of the evidence. In assessing the reliability of the chain of custody, there is a presumption of regularity supporting the acts of public officials. The defendant bears the burden of producing evidence of a broken chain of custody. If there is a reasonable inference of tampering or substitution, then the proof is insufficient to support a finding that the matter in question is what it purports to be.

¶14. The State objected, arguing that no evidence of tampering or substitution of the evidence was introduced. Accordingly, the State argued, the presumption of regularity in favor of public officials held fast. The trial court refused Sheely's proposed instruction, finding that an adequate chain of custody had been established and that Sheely failed to meet

6

his burden of producing evidence to demonstrate a break in the chain of custody. The jury retired and subsequently returned its verdict, finding Sheely guilty. The trial judge sentenced Sheely to two years in the custody of MDOC, suspending his sentence upon completion of the MDOC Long Term Therapeutic Community Drug and Alcohol Program. Sheely moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. That motion was denied. Sheely appeals his conviction, challenging the sufficiency of the evidence and the trial judge's refusal of his proposed chain of custody jury instruction.

## I.     Whether the evidence was sufficient to convict Sheely.

¶15.    Mississippi Code Section 41-29-139(c)(1)(B) provides that "[i]t is unlawful for any person knowingly or intentionally to possess any controlled substance . . . ." Miss. Code Ann. § 41-29-139(c) (Rev. 2018). The statute further sets forth that "[a] person shall be charged and sentenced as follows for a violation of this subsection with respect to: (1) A controlled substance classified in Schedule I or II . . . . (B) If one-tenth (0.1) gram or more or two (2) or more dosage units, but less than two (2) grams or ten (10) dosage units, by imprisonment for not more than three (3) years or a fine of not more than Fifty Thousand Dollars ($50,000.00), or both." Miss. Code Ann. § 41-29-139(c)(1)(B) (Rev. 2018). Sheely contends that the State failed to present sufficient evidence to support the jury's verdict that he intentionally or knowingly possessed a felony amount of a controlled substance.

¶16.    This Court reviews whether the evidence is sufficient to sustain a conviction de novo. *Green v. State*, 269 So. 3d 75, 79 (Miss. 2018) (citing *Brooks v. State*, 203 So. 3d 1134, 1137 (Miss. 2016)). In reviewing whether the evidence is sufficient to sustain a verdict, we

7

view the evidence in the light most favorable to the State. *Swanagan v. State*, 229 So. 3d 698, 703 (Miss. 2017) (quoting *Fagan v. State*, 171 So. 3d 496, 503 (Miss. 2015)). In doing so, we determine whether the State presented evidence sufficient on each element of the charge so that a rational juror could find all of the essential elements of the offense beyond a reasonable doubt. *Id.* (quoting *Fagan*, 171 So. 3d at 503).

¶17. Sheely argues that under Section 41-29-139(c)(1)(B), "[i]t is not just the controlled substance that must be intentionally possessed, but also the amount." In support of his contention that the State failed to show that he intentionally possessed a felony amount of methamphetamine, Sheely points to Woodward's testimony, in which Woodward related that "he told me . . . after he realized he was arrested, that that was not a felony amount of meth. He said it was less than a tenth of a gram and it was not illegal."

¶18. Sheely's contention is misguided. This Court has held that "[t]o support a conviction for possession of a controlled substance, 'there must be sufficient facts to warrant a finding that [the] defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it.'" *Glidden v. State*, 74 So. 3d 342, 345-46 (Miss. 2011) (second alteration in original) (quoting *McClellan v. State*, 34 So. 3d 548, 553 (Miss. 2010)).

¶19. Woodward's testimony regarding Sheely's statement to him is evidence that Sheely was aware that he possessed methamphetamine in his pocket and that he was intentionally consciously in possession of it. Nonetheless, Sheely contends that there was insufficient evidence to convict him because, he argues, the State failed to present any proof that he was

8

consciously aware of the *quantity* of methamphetamine that he consciously possessed in his pocket.

¶20. It is a longstanding principle of appellate courts that "[t]he jury is the sole judge of the weight and credibility of the witness." *Jackson v. State*, 580 So. 2d 1217, 1221 (Miss. 1991) (citing *Dixon v. State*, 519 So. 2d 1226, 1228 (Miss. 1988)). The jury was presented evidence through Woodward's testimony that Sheely was consciously aware that the red-stripe bag taken from his pocket contained methamphetamine. Evidence was presented that Sheely was in actual possession of that bag as it was recovered from his person. Lastly, the crime lab results were presented, revealing that the white crystalline substance recovered from Sheely's person was methamphetamine, a Schedule II controlled substance, and that it weighed 0.157 grams, a point disputed by Sheely. The jury was well within its power to accept this evidence and find that Sheely was aware of the presence of a Schedule II controlled substance in his pocket, that he was intentionally and consciously in possession of it, and that the methamphetamine recovered from his person weighed more than one-tenth of a gram. Thus, a rational juror could find each essential element of simple possession beyond a reasonable doubt.

## II. Whether the trial court erred by denying Sheely's proposed jury instruction.

¶21. Sheely challenges the trial court's refusal of Jury Instruction D-7. In refusing the instruction, the trial court found that

> My understanding is that this court, not the jury, is vested with the discretion of determining whether an adequate chain of custody has been established by the State. And I've already found that that existed. And I further found that

9

the Defendant did not meet its burden of producing evidence to demonstrate a break in the chain of custody. And the applicable test in determining whether the Defendant has met its burden is whether there is a *reasonable inference of likely tampering with or substitution* of the evidence. And I found as a matter of law that proof wasn't submitted.

(Emphasis added.)

¶22. "This Court reviews the grant or refusal of a jury instruction 'under an abuse-of-discretion standard.'" ***Shelton v. State***, 214 So. 3d 250, 258 (Miss. 2017) (quoting ***McInnis v. State***, 61 So. 3d 872, 875 (Miss. 2011)). Sheely has the right "to have jury instructions which present his theory of the case[.]" ***Roberson v. State***, 199 So. 3d 660, 664 (Miss. 2016) (internal quotation marks omitted) (quoting ***Dickerson v. State***, 175 So. 3d 8, 26 (Miss. 2015)). But his right "is limited, however, in that the court is allowed to refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is *without foundation in the evidence*." ***Id.*** (emphasis added) (internal quotation marks omitted) (quoting ***Dickerson***, 175 So. 3d at 26). "Any question as to the chain of possession is within the sound discretion of the trial judge, and, absent abuse resulting in prejudice to the defendant, his decision will stand on appeal." ***Gibson v. State***, 503 So. 2d 230, 234 (Miss. 1987) (citing ***Wright v. State***, 236 So. 2d 408, 409 (Miss. 1970)).

¶23. Moreover, "[t]he test regarding the chain of custody is whether an indication or reasonable inference exists 'of probable tampering with the evidence or substitution of the evidence.'" ***Cyrus v. State***, 248 So. 3d 760, 762 (Miss. 2018) (quoting ***Tubbs v. State***, 185 So. 3d 363, 369 (Miss. 2016)). "A presumption of regularity applies to the actions of the public officers, and the defendant bears the burden of producing evidence that the chain of

10

custody has been broken." *Id.* (citing *Tubbs*, 185 So. 3d at 369). "A mere suggestion of substitution does not meet this burden." *Id.* (citing *Tubbs*, 185 So. 3d at 369). And even if there is a gap in the chain of custody, it would go to the weight of the evidence, not admissibility. *Deeds v. State*, 27 So. 3d 1135, 1143 (Miss. 2009) (quoting *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 n.1, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009)).

¶24. Sheely challenges the chain of custody of the methamphetamine found in his pocket by arguing that his was stored with methamphetamine recovered from Ledet. Evidence was presented to the jury of the chain of custody of the substances recovered from Ledet and Sheely. Evidence was presented that the red-stripe bag recovered from Sheely's pocket was put into its own evidence bag, which was subsequently placed into a larger evidence bag, along with a separate evidence bag containing the marijuana found in the rear of Sheely's vehicle. Evidence was presented that the substance recovered from Ledet was placed in its own evidence bag, which was *not* included in the larger evidence bag with the substances attributed to Sheely. Although both Ledet's and Sheely's methamphetamine were stored in the same evidence locker, evidence was presented that Ledet's crystalline rock was never in the same sealed evidence bag as the white crystalline substance found in Sheely's pocket. Evidence was presented that the evidence bags were unopened until placed into separate heat-sealed bags as required by the crime lab. Evidence was presented that the substances received by the crime lab were delivered separately as their own individual exhibits without any indication of damage to the integrity of the seal of either bag.

¶25. Conversely, Sheely failed to present any evidence that would support the granting of

his proposed chain of custody jury instruction. Sheely's unsupported suggestion that Ledet's crystalline rock and the methamphetamine found on his person could have intermixed is not sufficient to overcome the presumption of regularity. Because Sheely failed to meet his burden to overcome the presumption of regularity, the trial court did not abuse its discretion by refusing Sheely's proposed instruction.

## CONCLUSION

¶26. The jury was presented sufficient evidence to find beyond a reasonable doubt that Sheely was aware of the presence of a Schedule II controlled substance in his pocket, that he was intentionally and consciously in possession of it, and that it weighed more than one-tenth of a gram. Accordingly, a rational juror could find all of the essential elements of simple possession beyond a reasonable doubt. Moreover, Sheely failed to present evidence showing probable tampering or substitution of the evidence. Because Sheely did not meet his burden to overcome the presumption of regularity, the trial court did not abuse its discretion by refusing Sheely's chain of custody jury instruction.

¶27. **AFFIRMED.**

**KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**