# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00505-COA

**DARRICK MICHAEL HARRIS**                                              APPELLANT

**v.**

**STATE OF MISSISSIPPI**                                              APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 04/01/2022 |
| TRIAL JUDGE: | HON. LINDA F. COLEMAN |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | KAYLYN HAVRILLA McCLINTON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAUREN GABRIELLE CANTRELL |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/20/2024 |
| MOTION FOR REHEARING FILED: | |

### BEFORE WILSON, P.J., GREENLEE AND McCARTY, JJ.

### GREENLEE, J., FOR THE COURT:

¶1. Darrick Harris was convicted in Bolivar County Circuit Court of sexual battery by a person in position of trust or authority for sexually abusing his daughter D.H.[1] Harris claims on appeal that the trial court erred by admitting testimony under the tender-years exception to hearsay, that the evidence was insufficient to prove the element of penetration, and that cumulative error requires reversal. Finding no errors, we affirm Harris's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

---

[1] We use initials in place of the minor child's name.

¶2.     D.H. is the daughter of Darrick Harris and Toshiko Ward.  In October 2019, Harris and eleven-year-old D.H. lived part time with Harris's mother, Tommie Jean Harris (Tommie Jean) and part time with Harris's girlfriend, Alisa Williams.[2]  On October 3, 2019, D.H. disclosed to Williams that Harris had sexually abused her.  D.H. made a separate disclosure to her school counselor Rita Smith on October 9, 2019.  Both Williams and Smith testified about D.H.'s disclosures at a tender-years hearing and at trial.  *See* MRE 803(25).  In addition, forensic interviewer Amber Cope testified at a tender-years hearing and at trial regarding her interview with D.H.  Because the tender-years testimony is at issue in this appeal, we begin with this testimony.[3]

**Williams's Testimony**

¶3.     Williams had a daughter close to D.H.'s age and Williams acted as a mother-figure to D.H.  Williams would periodically warn her daughter and D.H., "If anybody touches them in an inappropriate way to . . . let me know."  On October 3, 2019, Williams asked her daughter and D.H. the same question and noticed that D.H. had "a look on her face."  Williams asked D.H. if there was anything she needed to tell her, and D.H. responded, "Yes."  Williams asked her if anyone had "messed with [her]."  D.H. responded, "Yeah."  Williams asked "Who?" and D.H. responded, "My dad."

¶4.     D.H. disclosed to Williams that Harris had been molesting her.  Specifically, D.H. told

---

[2]  Tommie Jean was charged along Harris with hindering prosecution in the first degree for her role in concealing Harris's crime.

[3]  Each of the witnesses' testimony was consistent between the tender-years hearing and trial.

2

Williams that Harris had put his mouth on her, put his fingers in her, and that "he stuck his thang up in me." D.H. explained that the molestation occurred at Tommie Jean's home. Williams told Tommie Jean about the abuse, but Tommie Jean told Williams that she did not believe D.H. was telling the truth. Williams then contacted D.H.'s mother, Ward, who filed criminal charges against Harris. After the initial disclosure, D.H. told Williams that Harris tried to molest her again while they were at Harris's cousin's house. D.H. was able to avoid being molested by standing outside on the lawn for the whole visit. Williams testified that she did not give D.H. any ideas about what to say when D.H. disclosed the sexual abuse. Williams had warned D.H. not to lie and D.H. confirmed that "it happened."

¶5.     The trial court found that D.H. was not prompted by Williams's question about abuse. The trial court found the comments were spontaneous and that Williams was credible.

**Smith's Testimony**

¶6.     On October 9, 2019, D.H. disclosed the abuse to Rita Smith, a counselor at West Bolivar Middle School. D.H. approached Smith and told her that she needed to talk. Smith said that she was busy, but if it was "really, really important," she could write it in a journal for Smith to read when she was free. Smith found D.H. waiting in her classroom with the written note in the journal. D.H. asked Smith to read the note. The journal stated: "Please don't cry reading this! I don't like life because no one loves me. I feel like this is because I was molested by my dad[4] and no one cares. . . ."

¶7.     After reading the note, Smith talked with D.H., who explained that Tommie Jean

---

[4] The original letter included quotation marks around "dad."

3

knew of the abuse but told D.H. not to tell anyone. D.H. stated the abuse was ongoing and that Harris would attempt to molest her whenever Tommie Jean left for work. D.H. would avoid Harris by getting dressed and waiting outside for the bus. As a "mandatory reporter," Smith reported the abuse to her principal and contacted the police department. The school called Tommie Jean and D.H. to the principal's office to discuss the situation with school administrators. The principal shared D.H.'s disclosure with Tommie Jean who shouted at D.H., "I told you not to open your 'blank' mouth." D.H. left the school with a Department of Human Services worker.

¶8. The trial court found that D.H. was not mature or advanced for her age, but acted her age. The trial court found D.H. was of tender-years. Furthermore, the trial court found that D.H.'s written disclosure "seem[ed] appropriate for a child . . . [and] [n]o one ha[d] presented any reason why this child would lie."

**Cope's Testimony**

¶9. On October 23, 2019, Cope began her forensic interview with D.H. After establishing rapport, Cope asked D.H. if she knew why she was coming to talk with her. D.H. was apprehensive, so Cope asked D.H. if she would like to write down her answer instead of speaking it. D.H. wrote down that her dad ". . . tried to stick it in me." Using a male anatomical drawing, Cope asked D.H. to identify what Harris tried to "stick" in her. D.H. identified it as the penis. Using a female anatomical drawing, Cope asked D.H. what she meant when she said "in me." D.H. circled the vagina on the female drawing.

¶10. After further questioning, D.H. explained to Cope that this happened in December

4

2018 at Tommie Jean's house.[5] Harris and D.H. had been living there since November 2018, and they were sharing a room together. When asked to elaborate on the act, D.H. said that she had taken off her shorts and underwear, wearing only a tank top. She was lying down with her legs apart and Harris tried to stick his penis in her vagina, but "it wouldn't go." Cope asked her more questions, and D.H. said that Harris told her it was because she was too small. Harris also told D.H. that he was doing this because she was wanting a boyfriend. D.H. tried to scream, but Harris covered her mouth. Harris told her not to tell anybody and that he would never do it again. However, at a later point, Harris was driving D.H. to school and pulled over on the side of the road to show her his penis. Harris said, "This is what I tried to stick in you."

¶11.    D.H. described several more instances of sexual abuse to Cope. Once, D.H. was in her room getting ready for school when Harris came in, grabbed her "boodie," and put it against his penis. He began moving back and forth while rubbing D.H.'s vaginal area with her clothes on. Harris also kissed D.H. on her mouth and body. D.H. described another time when Harris entered her room, kissed her on the mouth, and began to unzip his pants before D.H.'s grandfather started walking down the hall. Harris zipped up his pants and sat on the bed before he was caught. D.H. described another instance while they were at Williams's home where Harris put his finger in D.H.'s vagina while she was lying on the couch at night. Harris stopped when Williams's son came out of the bathroom. This particular instance occurred about a week before D.H.'s disclosure to Williams.

---

[5] D.H. was ten years old at the time.

¶12. The trial court found that D.H.'s statements during the interview were unprompted. The trial court reiterated that D.H. had no motive to lie and that she was of tender-years.

**Additional Trial Testimony**

¶13. After Williams contacted Ward, Ward spoke to D.H. Ward testified that D.H. stopped answering her text messages, but when Ward's daughters talked to D.H., she disclosed the abuse to them over text messages. Ward testified that she confronted Harris and that "[h]e didn't say anything about it." Ward contacted the police and pressed charges against Harris for sexual abuse.

¶14. On October 3, 2019, Sergeant Jonathon Trotter of the Bolivar County Sheriff's Office was dispatched to conduct a welfare check on D.H. at Tommie Jean's residence. When he arrived, he asked D.H. in front of Tommie Jean whether D.H. felt safe. Tommie Jean told D.H., "You need to go ahead and tell them." D.H. told Sergeant Trotter she felt safe and was not scared, and she confirmed this again when Sergeant Trotter pulled her aside and asked the same question in private.

¶15. Police Investigator Simon Bush testified that he received a call from Ward on October 3, 2019, claiming Harris had "messed with" her daughter D.H. in December 2018. Ward sent deputies to conduct a welfare check at Tommie Jean's residence and referred the case to the Mississippi Department of Child Protection Services (CPS). Investigator Bush testified that he received another call on October 10, 2019, that said D.H. had written a letter to her school's counselor stating her father molested her. Investigator Bush was present for D.H.'s forensic interview with Cope. He testified that the information D.H. disclosed during her

6

interview was consistent with other information he gathered in the course of his investigation. Using the information received from D.H.'s school, CPS, and with interviews of Ward, Williams, Tommie Jean and Harris, Investigator Bush officially charged Harris with sexually battery of D.H.

¶16. D.H. testified at trial. She was initially apprehensive and non-responsive to many of the questions asked to her. D.H. testified that she was living with Harris at Tommie Jean's in December 2018 "[b]ecause [she] wanted to." She described Williams as Harris's ex-girlfriend and that they would occasionally stay at Williams's home. D.H. testified that she wanted to talk to Smith at school "[b]ecause [she] had something to tell her." D.H. testified that Smith told her to write it down and that she wrote in Smith's journal. When asked what she wrote, D.H. said that "[she] wrote about what happened." When asked to tell the jury what her dad did to her, D.H. responded, "He touched me." When asked "How?" D.H. said, "Inappropriately." D.H. said that Harris sexually assaulted her at Tommie Jean's house.

¶17. Later in the questioning, D.H. described one instance of abuse. She testified that she was lying in bed asleep one night and was awoken by Harris touching her vagina with his fingers. The State asked D.H. whether Harris's fingers went inside or outside of her vagina, and D.H. responded, "He couldn't fit." When asked "How do you know he couldn't fit?" D.H. responded, "Because it hurt." She elaborated, "[Harris] said it was too tight." Later in the questioning, after being asked to elaborate, D.H. confirmed that Harris tried to stick his penis in her. The State asked D.H. if Harris ever mentioned that event again, and D.H. said, "Yes." D.H. testified that she was riding in the car with Harris when he pulled over,

7

opened the back seat of the car, and showed his penis to her. D.H. testified Harris told her "that was what he was trying to get in [D.H.] last night."

¶18. D.H. testified that she told Tommie Jean what happened, but Tommie Jean told her not to tell anyone "[b]ecause she didn't want [Harris] to go to jail." D.H. recounted that she told Williams about the abuse and that she told Sergeant Trotter she was fine "[b]ecause that is what I was told to do." D.H. denied that anyone told her to say Harris had sexually abused her and was able to identify Harris to the jury by his clothing.

¶19. After the State rested, Harris moved for a directed verdict, which the trial court denied. Both Harris and Tommie Jean waived their right to testify. Harris renewed his motion for a directed verdict, which was denied. The jury found Harris guilty of two counts of sexual battery by a person in a position of trust or authority. He was sentenced to fifteen years in custody, with five years suspended and ten years to serve, followed by five years of post-release supervision. He was also ordered to register as a sex offender upon release. After his post-trial motions were denied, Harris appealed.

## DISCUSSION

¶20. Harris claims that (1) the trial court erred by admitting tender-years testimony without properly analyzing the relevant factors; (2) the evidence was insufficient to prove the element of penetration under the sexual battery statute; and (3) cumulative error had a prejudicial effect on Harris's case and requires reversal.

### (1) Tender-Years Testimony

¶21. Harris claims that the trial court erroneously admitted tender-years testimony without

properly analyzing the relevant factors. The State argues that Harris waived this issue by failing to object to the testimony, failing to join in Tommie Jean's objection to the testimony, and making a different argument on appeal than what was argued at trial. Our review of the record shows Harris never objected to the tender-years testimony. Counsel for Tommie Jean objected to and argued against the testimonies' admission, but Harris's counsel never explicitly joined the objection. Furthermore, even if Harris had joined Tommie Jean's objection, Tommie Jean's argument was that the tender-years hearsay exception should not apply to her because she was not charged with sexually abusing D.H. By failing to raise an objection to the tender-years testimony at trial, Harris has waived this argument on appeal. *See Smith v. State*, 986 So. 2d 290, 295 (¶¶13-14) (Miss. 2008). Waiver notwithstanding, we will discuss the merits of Harris's argument.

¶22. Mississippi Rule of Evidence 803(25) provides a tender-years exception to hearsay inadmissibility for children of tender-years describing a sexual act with or by another. MRE 803(25). There is a rebuttable presumption that children under the age of twelve are of tender years. *Veasley v. State*, 735 So. 2d 432, 436 (¶16) (Miss. 1999). The rule requires the trial court to have a hearing outside the presence of the jury to determine if the statement's time, content, and circumstances provide "substantial indicia of reliability." MRE 803(25)(A). For admissibility, the rule also requires the child to testify if he or she is available. MRE 803(25)(B)(i). "A trial court's determination of substantial indicia of reliability should be made on the record." *Pitts v. State*, 291 So. 3d 751, 756 (¶21) (Miss. 2020).

¶23. The advisory committee note to Rule 803(25) provides the trial court a nonexclusive list of twelve factors to consider in determining if there is sufficient indica of reliability:

> (1) whether there is an apparent motive on declarant's part to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; (5) the timing of the declarations; (6) the relationship between the declarant and the witness; (7) the possibility of the declarant's faulty recollection is remote; (8) certainty that the statements were made; (9) the credibility of the person testifying about the statements; (10) the age or maturity of the declarant; (11) whether suggestive techniques were used in eliciting the statement; and (12) whether the declarant's age, knowledge, and experience make it unlikely that the declarant fabricated.

MRE 803(25) advisory committee note. We review a trial court's admission of hearsay evidence under an abuse-of-discretion standard. *Mason v. State*, 203 So. 3d 732, 738 (¶26) (Miss. Ct. App. 2016).

¶24. Harris argues that the trial court did not engage in a meaningful analysis of these twelve factors. Harris also suggests that the trial court incorrectly applied several factors to the witnesses instead of the declarant D.H. While the factors are helpful in determining reliability, "a sufficient on-the-record finding of reliability does not require each factor be listed and discussed separately by the trial judge." *Crawford v. State*, 282 So. 3d 1230, 1236 (¶18) (Miss. Ct. App. 2019) (quoting *Webb v. State*, 113 So. 3d 592, 600 (¶24) (Miss. Ct. App. 2012)). Furthermore, "the unifying principle is that these factors relate to whether the child declarant was particularly likely to be telling the truth when the statement was made." *Id.*

¶25. The trial judge made several findings on record that D.H. was not mature or advanced for her age, had no motive to lie, and she was not prompted or coached. Further, the

disclosure was spontaneous. The trial judge also found each witness was reliable. Despite not addressing every factor, the trial court found that D.H. was of tender-years, and there was sufficient indicia of reliability to allow for the tender-years hearsay exception. The record supports the trial judge's findings, and the trial judge did not abuse her discretion by admitting the tender-years testimony against Harris. The argument is both waived and meritless.

### (2) Sufficiency of the Evidence

¶26. Harris claims that the evidence presented at trial did not sufficiently prove the penetration element of his charge of sexual battery by a person in a position of trust or authority. "When reviewing a challenge to the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Russell v. State*, 296 So. 3d 217, 223 (¶17) (Miss. Ct. App. 2020). Mississippi Code Annotated section 97-3-95(2) (Rev. 2014) states "[a] person is guilty of sexual battery if he or she engages in sexual penetration with a child under the age of eighteen (18) years if the person is in a position of trust or authority over the child including without limitation the child's teacher, counselor, physician, psychiatrist, psychologist, minister, priest, physical therapist, chiropractor, legal guardian, parent, stepparent, aunt, uncle, scout leader or coach." Miss. Code Ann. § 97-3-95(2).

¶27. Section 97-3-97 defines "sexual penetration" as cunnilingus, fellatio, buggery or pederasty, any penetration of the genital or anal openings of another person's body by any

11

part of a person's body, and insertion of any object into the genital or anal openings of another person's body. Miss. Code Ann. § 97-3-97(a) (Rev. 2014). Our caselaw explains that "sexual penetration is a term of art, and its legal definition does not require that the defendant's penis be inside the victim in the colloquial sense. Instead, sexual penetration requires only penetration of the labia, the fleshy folds of skin surrounding the entrance to the vagina, and that penetration need only be slight." *Austin v. State*, 282 So. 3d 545, 554 (¶32) (Miss. Ct. App. 2019) (quoting *Walker v. State*, 262 So. 3d 560, 565 (¶12) (Miss. Ct. App. 2018)).

¶28. Harris argues D.H. never testified that Harris inserted his penis into her vagina, merely that he tried to do so. However, in light of sexual penetration's legal definition, D.H.'s testimony was sufficient to allow the jury to find the penetration element. D.H. testified that Harris tried to stick his penis into her vagina but that it would not fit. She said that she knew it would not fit "[b]ecause it hurt." Harris later explained to D.H. that his penis could not fit because her vagina was too tight. While Harris failed to fully penetrate D.H. in the colloquial sense, his action certainly meets the legal definition of slight penetration of the labia. Beyond D.H.'s own testimony, the jury was able to hear ample testimony from the other witnesses supporting D.H.'s statements. In particular, Williams testified that D.H. told her that Harris stuck his fingers in D.H. and that "[h]e stuck his thang in [D.H.]." Cope's testimony also corroborated this evidence. Viewing the evidence in the light most favorable to the prosecution, a rational jury could find that Harris met the penetration element of his charge of sexual battery beyond a reasonable doubt.

### (3) Cumulative Error

¶29. Harris argues that the cumulative errors committed in this case created a prejudicial effect for Harris that requires reversal. "Under the cumulative-error doctrine, individual errors, which are not reversible in themselves, may combine with other errors to make up reversible error, where the cumulative effect of all errors deprives the defendant of a fundamentally fair trial." *Smith v. State*, 328 So. 3d 204, 209 (¶12) (Miss. Ct. App. 2021) (quoting *Ross v. State*, 954 So. 2d 968, 1018 (¶138) (Miss. 2007)). Because we have found no errors, this issue is without merit.

## CONCLUSION

¶30. Harris's claim that the trial court erred by admitting tender-years testimony was waived and also meritless. The evidence was sufficient to prove Harris penetrated D.H., considering the statute. Finally, there being no error, there can be no cumulative error that requires reversal. We affirm Harris's conviction and sentence.

¶31. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**